PROVOSTY, J.
The defendant was found guilty of murder without capital punishment, was sentenced to the' penitentiary for life, and has appealed.
His trial was at a special term of court. The venire of jurors for the term had not been published during 30 days, as required by section 1932, Rev. St., and he moved to quash it on that ground. In the case of State v. Winters, 109 La. 3, 33 South. 47, it was held that section 1932, Rev. St., was repealed by Act 135, p. 216, of 1898, and that the venire summoned for a special term of court need not be published.
His next complaint is that he was convicted on illegal evidence. The facts are these: The time of the arrival of the train on the night of the homicide was sought to be proved by the station agent, in behalf of the state. The point was of vital importance, because the defense was an alibi. After the witness had testified that a record had been kept of the arrival of trains, and that this record was not now here, but had been sent to the general office of the railroad company, he was permitted to refresh his memory by referring to a memorandum, supposed to be a copy of the record, which he had in his hand; the judge instructing him that he must testify from his own recollection after refreshing his memory, and not from the memorandum. After having been thus admonished, the witness went on and testified on the point in question. On cross-examination it developed that the paper which he held in his hand and from which he had refreshed his memory was nothing more than a telegram from the general office of the company giving the time of the arrival of the train in question, and it also developed that he had no recollection of the matter, and had based his statement exclusively upon the telegram. Thereupon the judge explained to the jury that the testimony was unreliable and incompetent, and that they were to disregard it entirely.
The general rule is that the act of a witness for which the prosecution is not responsible will not vitiate a verdict (State v. Rugero [La.] 42 South. 495[1]), and the general rule is also that the admission of incompetent evidence is cured by striking out the evidence and instructing the jury not to consider it (12 Cyc. 565, 709), especially where the defendant has not asked that the jury be discharged, but has taken the chances of an acquittal. But an exception to these rules, must be recognized where the circumstances are such as to lead the court to believe that, notwithstanding the admonitions of the judge, the accused may have been condemned on the incompetent testimony, as in this case. Cyc., ubi cit.; Wigmore on Ev. vol. 1, p. 04, note; State v. Callahan, 47 La. Ann. 497, 17 South. 50. To justify an exception to the above mentioned rule, a very strong case must be presented; but the present case 'appears to be of that character.
If the jury believed this witness to be entirely disinterested, as they presumably did, they must have accepted his testimony as a true statement of what appeared by the official record, and consequently as disproving the intended alibi of the defendant. In other words, since the alibi was the sole defense, they must have become convinced from this testimony that the defendant was guilty. And we doubt whether they could put aside that conviction, and thereafter hold the scale even for weighing the evidence, at the mere behest of the court. A man puts aside a con *483 viction on the discovery of error, and perhaps the mind of the trained jurist may be disciplined to do the same thing on discovery that the evidence upon which the conviction is founded does not square with the technical rules of evidence; but it is doubtful whether the ordinary juror may be depended on to put aside a conviction founded upon evidence which to him appears satisfactory and persuasive simply because he is told by the judge that this evidence does not measure up to the, technical standard prescribed by the rules of evidence as laid down in the books. We cannot but believe that, consciously or unconsciously, the jurors in the present case must have weighed the chances of error in the evidence as given and judged the matter accordingly. Consciously or unconsciously, they must have considered what was the probability of the telegram in the hands of the witness being or not a correct statement of what appeared by the record of which it purported to give the contents, and they must, we fear, have concluded that the probability of its not being such was so slight as hardly to be taken into consideration. Here was the station agent who had requested the general office of the railroad company to furnish him a true statement of what appeared by the record touching the arrival of this train, and here was the telegram sent in response to that request. If the jury believed that the person who consulted the record and sent the telegram was disinterested, and they had no reason for not so believing, then the only danger of the telegram not being a correct representation of the record was that a mistake had been made, and in a matter so simple such danger was, we believe, too slight for serious consideration.
Moreover, for all that appears, there was no further evidence offered by the state on this important point; and therefore, for all that appears; the defendant’s alibi was overthrown by this incompetent evidence. The presumption is that had such further evidence been administered the judge in his per curiam would have adverted to that fact as going to minimize the danger of injury to defendant.
We pass to the third bill of exception. One Will Williams having testified for the state that “he had seen the accused with a gun near the place of the killing very shortly before the fatal shot was fired,” the defendant, after proving that the said Williams was at the house of one Bellfield on the night of the homicide, propounded to the latter the following question: “Did Will Williams then give you any information as to who did the killing, or concerning the party who did it?” —at the same time cautioning the witness not to state what said Williams had said to him. This question was objected to, and ruled out, on the ground that the proper foundation had not been laid for contradicting Will Williams, and that the answer to the question would be hearsay.
Conceding, for argument, that the ruling here complained of was erroneous, the bill of exception fails to show the relevancy of the excluded evidence; in other words, fails to show wherein defendant was injured by the exclusion of the evidence. Therefore no showing is made for the intervention of this court. By the other bills of exception in the record, however, the court is informed that the defense was an alibi, and in the brief this court is informed that the statement of the witness Will Williams was not merely that he had seen the accused “near the place of the killing,” but that he had seen him concealed near the house of the deceased; and also, while the bill does not expressly say so, yet it gives rise to the inference that Will Williams, when he went to the house of Bell-field, knew already of the homicide, so that the court suspects that the facts are that the deceased was assassinated in his house by a shot from the darkness outside, and that the sole question in the case was the identi *485 fication of the assassin, and that the object of the excluded evidence was to show that the testimony which Will Williams npw gave, which so strongly implicated the accused, had not been given by him when visiting Bell-field immediately after the event when the murder was the subject of conversation, and when it was so natural that he should have spoken of the suspicious conduct of defendant; thereby to lay the foundation for the argument to the jury that the witness would have spoken on that occasion if he had really seen what he now pretended to have seen. If these were the circumstances, the evidence should have been admitted. The object of the question would not then have been to contradict anything that the witness had said, or to elicit hearsay; but simply to prove a fact within the knowledge of Bellfield himself, namely, that on the occasion in question Will1 Williams had not spoken of the suspicious conduct of the accused. In thus expressing our views upon a question not regularly presented, we have departed from our usual practice; our reason being that the case has to be tried again and that the same question may recur on the second trial.
The third and last bill of exception is to the ruling of the court permitting the district attorney to put to one of the witnesses of the defendant on cross-examination the questions whether she realized what would happen to her in another world if she swore falsely, and, again, if she knew the nature of an oath and the penalty for false swearing. Manifestly these questions were proper.
The verdict and judgment are set aside, and the case is remanded for another trial.

 117 La. 1040.