221 So.2d 480

**STATE of Louisiana**

v.

**Raymond HENDERSON.**

No. 49462.

March 31, 1969.

Rehearing Denied May 5, 1969.

Stafford & Pitts, James A. Bolen, Jr., Alexandria, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., Robert P. Jackson, Asst. Dist. Atty., for appellee.

FOURNET, Chief Justice.

Defendant, Raymond Henderson, prosecutes this appeal from his conviction and sentence to serve thirty years at hard labor in the state penitentiary on a charge by bill of information in that he "on or about the 9th day of March, 1968 while armed with a dangerous weapon, to-wit: a knife, robbed Tommy Mahfouz," relying for reversal thereof on three alleged errors committed during the course of the trial to which timely objections were made and bills reserved.[1]

The first bill was reserved when the trial judge overruled counsel's motion to strike the in-court identification of the accused by Mr. Mahfouz, claiming it was "based upon a police lineup at which the defendant was not represented by Counsel," relying upon the decision of the Supreme Court of the United States in the case of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. Counsel contends that by allowing into evidence the in-court identification of the accused by the victim the court committed manifest error prejudicing defendant's right to a fair trial. In argu-

ment, both orally and in brief, it is urged that without benefit of the illegal lineup the victim would not have been able to give an independent identification of the accused as evidenced by the fact that his description of the robbers given to the investigating police was very general, although he was in close proximity to the robber at the time of the crime, making no mention of obvious identifying marks tatooed on both arms and his forehead. It is further pointed out that no mention was made by Mahfouz of the assailant having a slim face or something about his hair and eyes as he testified in court, exemplifying that as a result of the lineup he could more vividly recall details of the robber.

In the recent decision of this court in State v. Allen, 251 La. 237, 203 So.2d 705, in which the identical issue posed here was urged and in determining the applicability of the Wade case, we expressed our appreciation of the holding in the latter case to be: "A courtroom identification at the trial, based upon pre-trial lineup identification without the benefit of counsel, is a deprivation of Sixth Amendment Rights which are made obligatory on the States by the Fourteenth Amendment. The consequence is that a conviction obtained in a State Court under these circumstances cannot stand. A new trial must be granted at

1. While defendant reserved and perfected five bills of exception during the course of the trial, he is now only relying upon

Bills No. 1, 2 and 5, the others being abandoned.

which this evidence is excluded, *unless the prosecution can establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identifications.*" (Emphasis added.)

A careful study of the evidence in the record convinces us that the trial judge's conclusion that the in-court identification by Mr. Mahfouz was based upon observations of the suspect other than the lineup identification was correct. The testimony of Mr. Mahfouz leaves no doubt as to the clear opportunity he had to fully observe the accused at the time of the crime, pointing out that Henderson was standing right in front of him under the neon lights on the outside of his place of business holding the knife to his throat the entire time. The investigating officers, who arrived at the scene within minutes after the incident, testified that from the description they obtained from the victim, a cab driver being in the vicinity overhearing this description, short, both dark complexioned Negroes, one wearing a white looking shirt or sweater and the other in light clothes, informed the officers he had just seen two men fitting the description run down the street into the Red Onion Cafe, one block away. Based upon this same description the owner of the Red Onion Cafe readily advised the police officers the two men they were

looking for had been there a short time before and left, identifying them as Raymond Henderson and the other known to her only by the name Roosevelt.[2]

We find under the circumstances it is not likely that the victim had an opportunity to clearly see the assailant's hands as one was placed up against his throat and he searched through Mahfouz' pockets with his other hand. The trial judge in his per curiam to this bill stated that he "attempted to detect them (the tatoos on defendant) as (he) sat at the bench and the accused sat in the witness chair and at the counsel table" and concluded "they were not obvious" to him. We find this understandable inasmuch as it is apparent that a tatoo would not be readily observable on the accused who has been described as very dark, especially under the conditions described by the victim.

As to the argument that it was only at the trial that Mahfouz mentioned anything regarding the defendant's hair and eyes, we think it is apparent that at the time it was not expedient to elicit such detailed description inasmuch as immediately upon receiving a general description the officers were advised that these two men were seen running into a cafe one block away. Moreover, as aptly observed by the trial judge in his per curiam, "Many, many people can

2. The record reflects that this was Roosevelt Partee who testified as the state's main witness and was obviously an accomplice in the robbery.

not give verbal descriptions of physical images."

The next alleged errors complained of are related and will be discussed together. Bill of exception number 2 was reserved when the trial judge, upon objection by the state, refused to permit counsel for defendant to read to the state's witness, Roosevelt Partee, who had testified he was present during the robbery, a prior statement he had given Louis Foto, an investigator for the defense. The final bill urged by the defendant was reserved when the trial judge maintained the state's objection to the question asked defendant's investigator, who had been called to the stand on direct examination, "What did he (Roosevelt Partee) tell you his actions were that night?"

Counsel's contention is that this testimony was clearly admissible to impeach and contradict the testimony of Roosevelt Partee who was the main prosecuting witness, arguing that he had a right to read the prior statement of the witness made to the investigator in order to have him affirm or deny making the statement.

We think the trial judge's ruling in this case was correct. The law on the subject is clear that the credibility of a witness can be impeached by offer of proof of a prior contradictory statement only if the witness does not distinctly admit making such statement and then only after he has first been asked whether he has made such statement, his attention called to the time, place and circumstances and person to whom the alleged statement was made "in order that the witness may have an opportunity of explaining that which is prima facie contradictory." See, L.S.A.–Title 15, Article 493.[3]

■ A review of the record shows that the defendant had employed the services of an investigator with the Cenla Legal Aid Society, Louis Foto, to procure a written statement from Roosevelt Partee, consisting of his activities during the night of the robbery. On cross-examination in response to questions by defense counsel Partee admitted giving a written statement to an investigator, identifying his signature, and it was when counsel began to read therefrom that the state objected and was sustained by the trial judge, whereupon the jury was removed from the courtroom. At this time the trial judge declared the reason he had sustained the objection was that he did not know what in-court statements counsel was

3. "Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must be first asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible."

seeking to impeach by the prior written statement, to which counsel explained he had no particular statement to contradict, but wished to show in the statement Partee gave the investigator, which was supposed to be a true account of his activities that night, he had said nothing about a robbery or that he was present at one. The judge ruled that "as of this point there is no showing that this witness made a prior inconsistent statement" and the jury returned to the courtroom. In response to further questions Partee again admitted making the statement and assigned as his reason for not mentioning the robbery that he only told the investigator what he was asked and he was not asked anything about the robbery, declaring he would have told him about it if he had asked him.

■ The final bill is equally without merit. The question posed to Foto called for hearsay evidence. Inasmuch as the accused admitted making the controversial statement for reasons hereinabove stated it was not admissible to impeach him. However, the statement made by Partee to Foto, a fact within his knowledge, was admissible. See, State v. Armstrong, 118 La. 480, 43 So. 57. And under cross-examination Foto confirmed the testimony of Partee that in asking him to state his activities he never questioned him with reference to the robbery.

For the reasons assigned the conviction and sentence are affirmed.

BARHAM, Justice (concurring).

The majority has found the trial judge's ruling to which Bill of Exception No. 2 was taken to be correct. With this I cannot agree. According to the judge's per curiam the witness Partee was either a participant in the crime charged or an eyewitness to the crime and therefore "a key witness" for the State. A statement taken from Partee by the defense's investigator a few weeks before the trial purported to detail all of the activities in which he was engaged during the entire evening and night of the robbery, including the precise time of the robbery; this statement did not mention that he had been with the defendant during a robbery or had observed a robbery. On the witness stand, however, Partee described the robbery in detail. He stated that he was with the defendant all that evening, that between 7:45 and 8:00 o'clock he saw the defendant place a knife to the victim's neck and rob him of money.

When counsel for the defendant on cross-examination tried to read the prior statement to the witness Partee, the trial court ruled that the statement was not a "prior inconsistent statement", and would not allow it to be read to the witness. Counsel for defendant reserved his bill of exception.

If a witness has given a detailed statement of his activities during a particular period of time but has omitted any reference

to seeing or participating in a robbery, and then on the witness stand he describes in detail a robbery committed at knifepoint during that same period, these two statements are inconsistent.

Acknowledgment by a witness that he made a certain statement contained on a piece of paper, the contents of which were not divulged to the jury, fails to impart to the jury a prior inconsistency or contradiction or to present an attack upon the credibility of the witness. This defendant was entitled to have the prior inconsistent statement in its totality read to the witness so that he might admit or deny having made the statement. These inconsistencies are pertinent to the guilt or innocence of the defendant since the statement tends to provide him an alibi while the testimony identifies him as the perpetrator of the crime and relates all the elements necessary for a conviction. One of these two statements is a lie. It was the exclusive province of the jury to weigh the prior statement and the testimony in the light of the details and the surrounding circumstances of each, in order to assess the credibility of the witness and determine the truth or falseness of his testimony. The exclusion of the prior statement would thus constitute prejudicial, reversible error.

However, with the persistence of counsel and the vacillation of the trial court in its rulings, the witness later admitted in the jury's presence that he had in fact made a

statement which detailed his activities on the evening of the crime but which did not mention the robbery. The defendant, then, to some extent produced before the jury the witness's acknowledgment of a prior inconsistent statement. Moreover, the examination of the investigator to whom the statement was given revealed that the prior statement did not contain a mention of the robbery. Thus, in the light of the admission of the witness and the testimony of the investigator, the defendant has not shown prejudice because of his inability to produce before the jury the entire prior inconsistent statement.

While the error is grave, the prejudice has been counteracted or removed by the later testimony, and I therefore concur.