229 So.2d 726

**STATE of Louisiana**

v.

**Wilbur Fred LEWIS.**

**No. 49717.**

Dec. 15, 1969.

Wellborn Jack, Jr., of Jack & Jack, Shreveport, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Albert S. Lutz, Jr., Asst. Dist. Atty., for appellee.

HAMLIN, Justice.

Defendant was charged by bill of information with the crime of aggravated burglary (LSA–R.S. 14:60), convicted, and sentenced to serve fifteen years at hard labor in the Louisiana State Penitentiary. He appeals to this Court from his conviction and sentence and presents for our consideration one bill of exceptions reserved prior to trial.

## BILL OF EXCEPTIONS NO. 1

Bill of Exceptions No. 1 was reserved when the trial court after hearing prior to trial overruled defendant's motion to suppress evidence of identification.

The testimony attached to this bill discloses that Mrs. Alma Ruth Walker, a school teacher employed at J. S. Clark Junior High School, Shreveport, Louisiana, was alone in her home on the night of April 1, 1968; she was divorced, and her two sons were away at college. She retired at approximately 8:00 P. M. and reclined on a twin bed; a lamp containing a 75-watt globe was burning on a bed table, and her television was playing. She fell asleep and was awakened shortly before midnight by someone crawling between the twin beds. She recognized the intruder as a young man who lived several blocks away, whom she had known for approximately twenty years. Although he had not been in her classes, he had attended the school at which she taught; he had recently been discharged from military service. When Mrs. Walker asked him what was he doing in her house, he answered that she did not know him. He then jumped on her bed and attacked her; he turned off the lamp and tried to sexually assault her. Mrs. Walker said that she struggled with her assailant, fell off of the bed, and then hit and wounded him with an electric iron. He ran from the house as she screamed.

The police were summoned; several friends and relatives arrived at the victim's house. The victim named the defendant as her assailant, but she could only remember his first name; his last name was supplied by her sister who lived across the street from him. The defendant was immediately thereafter arrested at his home by Sgt. Marvin Thomas, who was accompanied by a friend of the victim's family. Defendant was handcuffed and brought to Mrs. Walker's home where, in the presence of friends, relatives, and police officers, she positively identified him as her assailant. He was then taken to the police station and later removed to the Confederate Memorial Hospital for treatment and stitching of his head wound.

Defendant testified that he had known Mrs. Walker since his childhood, and that he had lived in his home since he was a little boy; that for two years he had attended J. S. Clark Junior High School where Mrs. Walker was a teacher, but that he was not in her classes. He further testified that the wound on his head was the result of a fall at his work at the Shreveport Packing Company. He stated that the identification procedure at Mrs. Walker's home after his arrest lasted about five minutes and still further testified, in part, as follows:

"Q. Now between the time you were arrested by Officer Tisdal [Tisdal followed Sgt. Thomas from the defendant's home to that of Mrs. Walker] and the time Alma Ruth Walker identified you as the one she thought had done it, were you advised by anyone that you had a right to have an attorney present in any identification proceedings?

"A. (No response)

"Q. Did anyone advise you that you had a right to have an attorney between the time you were arrested and the time Alma Ruth Walker said she thought she was the one?

"A. To my knowledge, no, sir.

"Q. Did anyone advise you that you had a right to remain silent in that interval?

"A. No, sir.

"Q. Did anyone advise you that if you didn't have enough money to get an attorney of your own at that time that the State would appoint one for you?

"A. No, sir, I wasn't advised.

"Q. Did anyone advise you that anything you said in that interval could be used against you?

"A. No, sir, I wasn't advised."

In his motion to suppress evidence of identification, defendant avers that he was taken to the residence of the alleged victim, handcuffed with his hands behind his back, in custody and under arrest, unrepresented by counsel, and was exhibited by police officers for the purpose of identification to the alleged victim, another woman, and possibly others, who separately and in the presence of each other stated their belief that defendant "was the one." He argues that the law enforcement officials who arranged and conducted this highly prejudicial and suggestive single-suspect confrontation identification procedure had no problem of compelling urgency such as would justify their not using the identification procedure of the traditional line-up where identifying witnesses are presented with alternate choices in a non-suggestive and non-prejudicial manner. He contends that his right to due process under the Fourteenth Amendment to the United

States Constitution was violated by the use of single suspect confrontation identification procedure. He further contends that under the Sixth Amendment to the United States Constitution he was entitled to have counsel present during the conduct of all in-custody witness identification procedures, single suspect or line-up.

Among the demands of defendant's prayer is that the trial court, "Exclude *per se* and declare inadmissible any identification testimony from any of the State's witnesses who were present at the illegal single suspect confrontation identification procedure, regardless of whether such testimony is shown to have an independent source or not."

In this Court, counsel for the defendant states that he does not complain of the absence of counsel from a line-up identification because there was no line-up. He urges, as was urged in the motion to suppress evidence of identification, that less than an hour after the commission of the alleged offense, defendant was arrested and forcibly returned to the scene of the offense to be there singly viewed and identified by the alleged victim without benefit of counsel when he should have been represented by same.

Counsel contends that defendant's right to the presence of counsel at a traditional line-up cannot be avoided and circumvented by conducting in lieu thereof a much more highly prejudicial identification procedure without benefit of counsel. He further contends that defendant's constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated. For these reasons, counsel argues that the trial court erred in overruling defendant's motion and permitting the evidence of identification to be introduced at trial.

As stated supra, we have only one bill presented for our consideration, and it concerns a matter which occurred prior to trial. We do not know all the facts of trial; we do not have before us any facts of in-court identification—dependent or independent.[1] Therefore, this bill, which has been presented to us as unconnected and disassociated with the incidents of trial, has to be decided under its own peculiar facts and circumstances.

The cases of State v. Singleton, 253 La. 18, 215 So.2d 838, and State v. Henderson, 253 La. 981, 221 So.2d 480, ultimately involved in-court identification and are in essence not apposite to the instant bill. The case of State v. Allen, 251 La. 237, 203 So.2d 705, concerned line-up and in-court identification, matters not presently urged.

1. The State's brief recites, "Our second point of argument is that the evidence in this case clearly shows that the in court identification of Lewis by Mrs. Walker was based upon observations of the suspect other than the line-up identification."

The case of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, presented the question of whether courtroom identifications of an accused at trial are to be excluded from evidence because the accused was exhibited to the witnesses before trial at a post-indictment line-up conducted for identification purposes without notice to and in the absence of counsel. Such a question is not presented herein. Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, also involved vel non the legality of line-up. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, concerned identification by photographs, an issue not herein raised. Biggers v. State of Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267, is not apposite because therein the length of time occurring between the offense and the identification was extended. In Simmons, supra, the United States Supreme Court stated:

"In support of his argument, Simmons looks to last Term's 'lineup' decisions— United States v. Wade * * * and Gilbert v. State of California * * * in which this Court first departed from the rule that the manner of an extrajudicial identification affects only the weight, not the admissibility, of identification testimony at trial. The rationale of those cases was that an accused is entitled to counsel at any 'critical stage of the prosecution,' and that a post indictment lineup is such a 'critical stage.' See 388 U.S., at 236–237, 87 S.Ct., at 1937–1938. * * * * "

The foregoing statement fortifies our findings, supra, that the United States Supreme Court cases cited by counsel for the defendant are not apposite herein.

The case of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, concerned a pre-trial confrontation. The facts of the case were to the effect that Dr. Paul Behrendt was stabbed to death in the kitchen of his home. His wife jumped at the assailant, who knocked her down and stabbed her eleven times. While she was in the hospital fighting for her life, the accused, handcuffed to one of five police officers, was brought to her room; also present were two members of the District Attorney's staff. Mrs. Behrendt identified the accused as the assailant after she was asked by an officer whether he "was the man" and after the accused repeated, at the direction of an officer, a few words for voice identification. Mrs. Behrendt and the officers testified at the trial to her identification of the accused in the hospital room; she also made an in-court identification of the accused in the courtroom. The United States Supreme Court upheld the conviction and sentence to death and stated:

"We turn now to the question whether petitioner, although not entitled to the application of Wade and Gilbert to his

case, is entitled to relief on his claim that in any event the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. This is a recognized ground of attack upon a conviction independent of any right to counsel claim. Palmer v. Peyton, 359 F.2d 199 (C.A. 4th Cir. 1966). The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. *However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, and the record in the present case reveals that the showing of Stovall to Mrs. Behrendt in an immediate hospital confrontation was imperative.* * * * " (Emphasis from "However" ours.)

. We do not find that the confrontation between the defendant and Mrs. Walker was tainted. We do not find that its purpose was the avoidance of a line-up. We find that it was imperative because of Mrs. Walker's allegations to the investigating officers with respect to events which had occurred in her bedroom. The testimony, briefed supra, shows: (1) Mrs. Walker had known the defendant for approximately twenty years; (2) Mrs. Walker closely observed her assailant; (3) Mrs. Walker's view was not obstructed by darkness as there was a light in her room; (4) Mrs. Walker had ample time to observe and recognize her assailant; (5) Mrs. Walker did not accuse anyone other than the defendant; (6) The interval between the time of the commission of the offense and the time of confrontation was no longer than one hour; (7) The witnesses who testified at the hearing of the motion to supress evidence of identification—Wilbur Fred Lewis (the defendant), Mrs. Alma Ruth Walker (the victim), Officer Marvin Thomas, Officer T. C. Tisdal, Sgt. C. H. Palmer, and Lawrence Patton (brother-in-law of Mrs. Walker)—all stated that Mrs. Walker identified the defendant as her assailant.

Under the above facts and circumstances, we find no circumvention of procedural practices. We do not find that the defendant was prejudiced. We do not find that he suffered irreparable injury of mistaken identity. It follows that defendant suffered no deprivation of his constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution by not being represented by counsel at the time of the confrontation.

Bill of Exceptions No. 1 is without merit.

For the reasons assigned, the conviction and sentence are affirmed.