295 So.2d 782 (1974)
STATE of Louisiana
v.
Lloyd McMELLON.
No. 53839.
Supreme Court of Louisiana.
January 14, 1974.
On Rehearing June 10, 1974
*783 J. Isaac Funderburk, Abbeville, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The defendant, Lloyd McMellon, was charged by bill of information with simple burglary, a violation of LSA-R.S. 14:62. He was tried by jury, convicted, and sentenced to serve six years in the custody of the Louisiana Department of Corrections. The defendant appeals his conviction and sentence, relying upon four bills of exceptions.
The background facts are clear. There was a burglary at approximately 3:00 a. m. on the morning of August 11, 1972 at Landry's Store in Abbeville, Louisiana. Two young boys who witnessed the crime saw a pickup truck parked by the store. Allegedly, one man was loading this truck, and another was inside the cab.
Law enforcement officers took McMellon into custody at his home about 8:00 p. m., on the same day. The officers took the defendant and a pickup truck that he owned to the Sheriff's office. Officers secured McMellon's permission to search the truck and did so. No pertinent evidence was found.
*784 At about the same time, the police arrested Russell Murphy, a second suspect. Concomitant with this arrest, Murphy volunteered statements incriminating both himself and McMellon.
Murphy also told the police that two screwdrivers and two pairs of gloves which had been used in the burglary were in a toolbox in McMellon's truck. After securing McMellon's consent to a second search, the police re-examined the vehicle and found both the screwdrivers and the gloves.
Murphy pleaded guilty and, at trial, he was called as a state's witness. On the stand, however, he repudiated all prior statements incriminating the defendant.
BILLS OF EXCEPTIONS NOS. 2 and 3
Murphy testified that he alone had committed the burglary. When he did so, the district attorney confronted him with the fact that he had made prior inconsistent statements. Bill of Exceptions No. 2 was reserved when the trial court permitted the state to impeach its own witness and Bill of Exceptions No. 3 was reserved when the court denied a motion for a mistrial following Murphy's testimony.
LSA-R.S. 15:487 provides:
"No one can impeach his own witness, unless he has been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements."
The defendant's argument in support of Bill of Exceptions No. 2 is that the State made an inadequate foundation and insufficient showing of surprise or hostility. We disagree.
The record reflects that Murphy made a number of oral statements, asserting that the defendant participated in the burglary. He later signed a formal written statement to the same effect. On the stand, he repudiated the statements and testified that he alone had committed the burglary. He testified against the State. The District Attorney properly pleaded surprise.
We find, therefore, that the state established an adequate predicate to allow impeachment of its own witness by proof of prior contradictory statements. See LSA-R.S. 15:487 and 15:488; State v. Refuge, 264 La. 135, 270 So.2d 842 (1972); State v. Knox, 236 La. 461, 107 So.2d 719 (1959).
As to impeachment, LSA-R.S. 15:493 provides:
"Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible."
Here, the District Attorney did ask the witness whether or not the prior contradictory assertions had been made, furnishing sufficient particulars, as the statute demands. The record contains no indication that the witness misunderstood the contradictory assertions to which reference was made. After the defendant admitted the inconsistent assertions, neither the written statement nor testimony of the police officers who took the oral and written statements was offered.
The defendant complains that, in the examination of the witness, the District Attorney asked him specifically if he had made each of the several major inconsistent assertions composing the written statement.
We find this complaint insubstantial. As provided in LSA-R.S. 15:493, the witness *785 must be afforded an opportunity of explaining assertions that are prima facie contradictory. This can only be done by calling the contradictory assertion to his attention.
We note, moreover, that the defendant interposed no objection to the content of these questions at the time they were propounded. To the contrary, the defense waited until the District Attorney completed the examination and tendered the witness. At this point, he moved for a mistrial. When the motion was overruled, he reserved Bill of Exceptions No. 3.
Article 841 of the Louisiana Code of Criminal Procedure provides in part:
"An irregularity or error in the proceedings cannot be availed of after verdict unless it is objected to at the time of its occurrence and a bill of exceptions is reserved to the adverse ruling of the court on such objection."
As to questions propounded during trial, strong reason exists for requiring that the objection be made at the time of the question. Often the question can be withdrawn. See, e. g., State v. Maney, 242 La. 223, 135 So.2d 473 (1961). In other instances, it may be rephrased to remove the objection, either before or after the ruling of the trial judge.
In the present case, the objection raised by a motion for mistrial after the examination had been completed came too late.
We observe that the trial judge correctly instructed the jury, both at the time of impeachment and later in the general charge to the jury, that the impeachment evidence could be considered only on the issue of credibility and not as substantive evidence of guilt. See State v. Ray, 259 La. 105, 249 So.2d 540 (1971). Thus, undue prejudice as to the guilt issue was avoided.
Bills of Exceptions Nos. 2 and 3 are without merit.
BILLS OF EXCEPTIONS NOS. 1 and 4
Bill of Exceptions No. 1 was reserved to the denial of a motion to suppress evidence (2 pairs of gloves and 2 screwdrivers) seized as a result of a search of the defendant's truck. Bill No. 4 was reserved to introduction of these items into evidence at trial as well as to the introduction of the items taken in the burglary.
The record pertinent to the gloves and screwdrivers clearly shows that the defendant freely and voluntarily gave his consent to the search of the truck, where these items were found. This consent, moreover, was given after he had been apprised that he was suspected of having committed a burglary. The warrantless search was, therefore, proper. See State v. Nelson, 261 La. 153, 259 So.2d 46 (1972); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967).
As to the introduction of the items taken in the burglary, the defendant contends that they were not connected to him. It was, however, incumbent upon the State to prove that a crime had been committed; these articles were evidence of that fact. The question of whether this defendant participated in the crime was a factual matter for the determination of the jury.
These two bills are without merit.
For the reasons assigned, the conviction and sentence are affirmed.
SUMMERS, J., recused.
BARHAM, J., dissents and assigns written reasons.
TATE, J., dissents for reasons assigned by BARHAM, J.
BARHAM, Justice (dissenting).
I am of the opinion that Bills of Exceptions Nos. 2 and 3 have merit and require a reversal of this defendant's conviction. *786 When the State's witness, Murphy, an alleged coperpetrator of the burglary with which this defendant was charged, took the stand upon the trial of this matter, he testified that he alone had committed the burglary. The State's attorney asked Murphy if he had made a previous statement to the police concerning the burglary. Murphy admitted that he had made a prior statement and, in response to the State's question, "That's not what you told them when you made the statement, is it?", Murphy admitted that it was not. When asked what he had previously stated, Murphy replied, "I involved him [the defendant] in it when I made the statement to the police."
Counsel for the defendant reserved Bill of Exceptions No. 2 when the trial court, over defense objection, permitted the State to continue a lengthy, detailed impeachment process. Prior to the resumption of the State's questioning of Murphy, defense counsel asked that the court allow him to make his objection general, and the trial court permitted this. The prosecution proceeded to question the witness as to the various details of his prior statement, in effect reading the statement in the presence of the jury under the guise of verifying the inconsistencies between the witness' testimony and his prior statements. The prosecution did not limit its repetition of so-called prior inconsistent statements to statements which were contradictory of the testimony already given by the witness. Instead, the State used the prior hearsay statement of the defendant to prove the elements of the crime. Most of the statements which were presented to the witness under the guise of determining whether or not they contradicted the witness' prior testimony were foreign to the prior testimony elicited from the witness. During the prosecution's examination, defense counsel reurged his objection to the method of impeachment. At the conclusion of the prosecution's examination, defense counsel moved for a mistrial on grounds that the method of impeachment was improper. The court denied the motion and Bill of Exceptions No. 3 was reserved.
R.S. 15:493 sets forth the procedure for laying a foundation for proof of a contradictory statement. It provides:
"Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible." (Emphasis here and elsewhere supplied.)
In State v. Henderson, 253 La. 981, 221 So.2d 480 (1969) this Court stated: "* * * The law on the subject is clear that the credibility of a witness can be impeached by offer of proof of a prior contradictory statement only if the witness does not distinctly admit making such statement and then only after he has first been asked whether he has made such statement, his attention called to the time, place and circumstances and person to whom the alleged statement was made `in order that the witness may have an opportunity of explaining that which is prima facie contradictory.' See, L.S.A.Title 15, Article 493."
Murphy's prior out-of-court statement constituted hearsay and was inadmissible, over objection, as substantive evidence. R.S. 15:434. The out-of-court statement would have been rendered admissible only if Murphy had failed to "distinctly admit" making such a statement, and then only after substantial compliance with the procedure set forth in the first sentence of R. S. 15:493.
Once the witness admitted unequivocally that he had made the prior, inconsistent statement, the State's right to present further evidence or elicit testimony regarding the prior statement was at an end. The *787 State had effectively accomplished its attack upon the witness' credibility as provided for in R.S. 15:493. The substantive contents of the prior statement were inadmissible for any other purpose. The witness had not been reluctant to testify. The witness had only testified contrary to what he had said in a previous statement. His credibility was placed at issue simply because of the contradictions. See State v. Rossi, 273 So.2d 265 (La.1973), State v. Jackson, 248 La. 919, 183 So.2d 305 (1966), and State v. Smith, 193 La. 706, 192 So. 106 (1939). It is my belief that the State's protracted review of the contents of the prior statement given by Murphy gravely prejudiced the defendant and requires a reversal of his conviction. The State resorted to the subterfuge of impeachment which had already been fully accomplished in order to introduce an inadmissible hearsay statement.
I respectfully dissent.

On Rehearing
TATE, Justice.
The defendant McMellon was convicted of simple burglary, La.R.S. 14:62, and sentenced to six years at hard labor. On the original hearing of his appeal, we affirmed his conviction. Rehearing was granted, primarily to reconsider our ruling as to Bill of Exceptions No. 3. This concerned the state's alleged introduction into evidence of an out-of-court statement (hearsay) previously given by a recalcitrant state witness.

Context Facts
As stated in our original opinion, the facts involve a burglary committed by Russell Murphy and, allegedly, the defendant McMellon. The chief evidence connecting McMellon with the burglary is Murphy's testimony.
Murphy admitted on the stand that he had used McMellon's truck in the burglary. He also admitted using a screwdriver and gloves among others found in the toolbox of McMellon's truck (which McMellon testified were kept there by him for use in his employment as oil-worker and part-time mechanic). On the stand, Murphy stated he had accomplished the burglary alone.
In implicating McMellon, the state relied, (a) on evidence tending to indicate that two men had committed the burglary, (b) on the admitted fact that McMellon and Murphy had been together on a drinking spree all night (McMellon testified that Russell had borrowed his truck and left him for an hour or so during the early morning), and (c) on the testimony of a lady bar owner that (a little before McMellon had slapped her, causing her to call the police and have McMellon and Murphy evicted from her lounge) McMellon and Murphy were loudly talking of committing a robbery.
McMellon took the stand in his defense. As he had since the police first approached him, he freely admitted that he had been with Murphy all evening and that he had loaned Murphy his truck. He freely consented to the search of his truck. (All items stolen in the burglary were found either in Murphy's possession or at a place in which hidden by Murphy, although wrapped in a blanket taken from McMellon's truck.)
McMellon consistently denied any implication in the burglary. He pointed out that he had been a law-abiding workingman and family man since he had been released four years earlier from the penitentiary, to which he had been committed for a teenage offense. Outside of Murphy's statement, he was charged primarily because he had been with Murphy all evening, because his truck was identified as used in the burglary, and because the evidence seemed to indicate two men were involved in the burglary.
It is in this context that the alleged error occurred. The state undoubtedly had a strong circumstantial case, although *788 Murphy's could be the only testimony directly identifying McMellon as Murphy's accomplice in the burglary. On the other hand, when Murphy repudiated an out of court statement so identifying McMellon,[1] Murphy's defense was not frivolous, as instanced by the nine-three split jury verdict to convict.
Bill No. 3
Murphy was called to the stand by the state. He testified that, although he had been with McMellon all evening, he left him about 3:00 A.M., borrowed his truck, and then committed the burglary by himself. He was then asked if he had not made a statement to the contrary to the police. He admitted he had. Then, when the state asked him what this prior contradictory statement was, he replied: "I involved him [McMellon] in it."
The state pleaded surprise, and the court permitted the state, over objection, to lay a foundation to impeach the statement given in direct testimonyi. e., that Murphy himself had committed the burglary, that he had left McMellon at the bar to do so, borrowing his truck.
We reiterate our holding on first hearing that the state adequately proved surprise, as required by La.R.S. 15:487 before it may impeach its own witness by evidence of a prior contradictory statement. See Bill No. 2.
As to Bill No. 3., we were inadvertently in error, in our first opinion, in stating that the defendant had made no objection to the content of the subsequent questions as to the details of the prior inconsistent statement. These questions, which in effect state the substance of the previous out of court statement, form the substantial basis of error urged by Bill No. 3.
Before the state commenced its further examination of Murphy, the defense made its objection general to all the testimony of this witness, because "the foundation was not laid to all questions pertaining to impeachment of this witness." Tr. 65, 66. This overruled general objection was adequate to preserve the defendant's right to complain of the succeeding questions.
We will therefore, on rehearing, consider on the merits the defendant's objection to the state's proof of prior contradictory statements.
At issue, is the applicability of La.R.S. 15:493 and whether, after Murphy admitted that his prior out-of-court statement had implicated McMellon in the burglary, the state could, question by question, elicit some of the details of the prior statement describing McMellon's implication in the burglary.
La.R.S. 15:493 provides:
"Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible." (Italics ours.)
Preliminarily, we should note that, upon Murphy's admission that he had made a prior contradictory statement implicating McMellon in the burglary, the state did not attempt to introduce or prove his prior seven-page written statement to the contrary. That is clearly prohibited by the italicized last sentence of the cited *789 La.R.S. 15:493. State v. Jackson, 248 La. 919, 183 So.2d 305 (1966).
Instead (after generally establishing the time, place, and circumstance of the prior out-of-court statement) the state proceeded to ask a series of questions as to details incorporated in the statement: "Do you deny that at the time you told Deputy Pedigo that you and Lloyd McMellon, after being out all night, went to Landry Store and entered the third store window? ... And that you used screwdrivers to pry open the third story window? ... And that the reason you all went in is that you were looking for a gun? ... And that after you had parked the truck a little distance away and walked up to Landry Store, that you and McMellon went into the third story window, pried open the gun case, took the guns and left them in a paper bag near the telephone pole? ... And that you then went and got the truck, came and picked up, you and McMellon, picked up the guns and ammunition and the two knives which were in the paper bag next to the telephone pole? ... Did you also tell him that you then left and hid some of the ammunition and guns near the railroad? ... That you and McMellon were together all night? ... Didn't you also tell Officer Pedigo that when breaking in, you and McMellon used a pair of gloves, cloth gloves, and two screwdrivers and that the gloves could be found in McMellon's truck?"
Murphy admitted making each of these statements.
Generally, the prior out-of-court statement cannot be brought in issue until the witness, on the stand at the trial, has testified inconsistently with such prior statement. There must be a material and relevant assertion made at the trial, before its possible inconsistency with the earlier out-of-court statement may become an issue as to the credibility of the witness at the trial. When impeachment by prior inconsistent statement is involved, the cross-examiner cannot ordinarily ask a witness whether he has previously made a statement out of court unless some trial assertion has been made with which the prior out-of-court statement is inconsistent. 3A Wigmore on Evidence, Section 1038 (Chadbourn rev., 1970).
Thus, on first impression, the procedure used to question about the prior statements is improper. The witness was not first asked, for instance, whether he had committed the burglary by entering the third-floor window, whether he had used screwdrivers, where he had placed the stolen guns after the burglary, etc. Instead, he was just asked if he had made such prior statements. In effect, the witness' admission that he had made such prior statements was evidence of their substantive content, and, in fact, the only testimony by this witness which described the method by which he and his alleged accomplice had accomplished the burglary.
Thus, the defendant contends, this procedure came perilously close to introducing the out-of-court ex parte statement into evidence, in violation at least of the rule against hearsay testimony. Cf. Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). The traditional reasons for denying the reliability and admission of such hearsaythe lack of opportunity by the defendant to cross-examine and clarify the statement at the time it was made, the lack of opportunity for the jury to evaluate the demeanor and circumstances under which the statement was made, the frequent intended or unintended inaccuracy that may result from edited answers to suggestive questions, as interpreted through the transcriber's mind are relied upon for the contention that the statements thus introduced are prejudicial hearsay admitted in violation of La. R.S. 15:434.
Questioning and evidence as to these prior statements are admissible solely with regard to the issue of the credibility of Murphy's trial testimony to the *790 contrary, not as to their substantive truth. State v. Ray, 259 La. 105, 249 So.2d 540 (1971). Questioning in such detail tends to focus attention on the contents of the prior statement, rather than on its limited function of testing the present credibility of the witness at the trial.
Ultimately, however, we conclude that, under the peculiar circumstances of this case, the questions as to the prior out-of-court statements did not substantially violate the limited exception to the hearsay rule permitted when prior inconsistent out-of-court statements have been made by a witness.
The questioning as to the major prior statements[2] specifically implicating McMellon are arguably justifiable as concerning specific other prior statements made by the witness inconsistent with his trial testimony. The witness at the trial admitted that he had made a prior statement generally implicating the defendant McMellon. The further questions of the state can be regarding as laying the foundation for introduction, if denied, of other prior out-of-court statements implicating McMellon in specific details of commission of the offenseinconsistent with the general trial assertion that McMellon had not been involved.
At issue is the truthfulness of the assertion made by the witness at the trial: that he alone had committed the burglary and that he had left McMellon at the bar when he had gone to commit it. He admitted having made a prior out-of-court statement generally implicating McMellon.
The further questioning concerning several of the witness' statements about specific key details of McMellon's participation with him in the burglary, can arguably be justified as elicited to afford the jury a further basis by which to evaluate the truthfulness of his general trial denial of McMellon's implication in it.
We are thus not persuaded that the truthfulness of the witness' general trial statement that McMellon was not implicated could be tested only against his general admission that he had previously told the police the contrary. Other prior statements as to specific acts of assistance by McMellon could, it seems to us, be used by the trial jury to weigh the present general denial, at the trial, of McMellon's assistance.
Thus, normally, La.R.S. 15:493 would prohibit the proof of inconsistent out-of-court statements which at the trial the witness admitted. However, here, technically the further questions were to lay the foundation to prove additional other prior statements which specifically implicated McMellon and which were inconsistent with the general trial denial of McMellon's implication.
The present situation is also distinguished from that in Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), whereby inadmissible hearsay testimony was brought to the jury's attention in the guise of cross-examination as to prior statements. Here, the declarant on the stand was subjected to full cross-examination. By it, the jury had a full opportunity to evaluate the circumstances under which the prior inconsistent statement was made, insofar as relevant to its determining whether the present contrary trial testimony was true or false. See California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

Conclusion
Bills Nos. 1 and 4 are without merit for the reasons stated by our original opinion.
Accordingly, for the reasons above stated, we affirm the conviction and sentence.
Affirmed.
*791 BARHAM, J., dissents and assigns reasons.
CALOGERO, J., dissents.
BARHAM, Justice (dissenting).
I dissent from the result reached by the majority for the reasons assigned in my dissent on first hearing and additionally for reasons which are supplied by the majority opinion on rehearing:
"Generally, the prior out-of-court statement cannot be brought in issue until the witness, on the stand at the trial, has testified inconsistently with such prior statement. There must be a material and relevant assertion made at the trial, before its possible inconsistency with the earlier out-of-court statement may become an issue as to the credibility of the witness at the trial. When impeachment by prior inconsistent statement is involved, the cross-examiner cannot ordinarily ask a witness whether he has previously made a statement out of court unless some trial assertion has been made with which the prior out-of-court statement is inconsistent. 3A Wigmore on Evidence, Section 1038 (Chadbourn rev., 1970).
"Thus, on first impression, the procedure used to question about the prior statements is improper. The witness was not first asked, for instance, whether he had committed the burglary by entering the third-floor window, whether he had used screw-drivers, where he had placed the stolen guns after the burglary, etc. Instead, he was just asked if he had made such prior statements. In effect, the witness' admission that he had made such prior statements was evidence of their substantive content, and, in fact, the only testimony by this witness which described the method by which he and his alleged accomplice had accomplished the burglary.
"Thus, the defendant contends, this procedure came perilously close to introducing the out-of-court ex parte statement into evidence, in violation at least of the rule against hearsay testimony. Cf. Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). The traditional reasons for denying the reliability and admission of such hearsaythe lack of opportunity by the defendant to cross-examine and clarify the statement at the time it was made, the lack of opportunity for the jury to evaluate the demeanor and circumstances under which the statement was made, the frequent intended or unintended inaccuracy that may result from edited answers to suggestive questions, as interpreted through the transcriber's mind are relied upon for the contention that the statements thus introduced are prejudicial hearsay admitted in violation of La.R.S. 15:434.
"Questioning and evidence as to these prior statements are admissible solely with regard to the issue of the credibility of Murphy's trial testimony to the contrary, not as to their substantive truth. State v. Ray, 259 La. 105, 249 So.2d 540 (1971). Questioning in such detail tends to focus attention on the contents of the prior statement, rather than on its limited function of testing the present credibility of the witness at the trial."
The majority, in these statements, has buttressed my original dissent. It is inconceivable that the majority can find "peculiar circumstances of this case" which validate the questioning by the District Attorney of this witness to elicit evidence for a conviction and not to attack credibility.
I respectfully dissent.
NOTES
[1] At the trial, Murphy stated he had given the statement implicating McMellon in the hope of escaping a penitentiary term on another offense with which charged (he did not), as well as of receiving a suspended sentence on the burglary charge (he did).
[2] Some of the other questions are clearly improper, such as that concerning whether the witness had previously stated that screwdrivers were used.