14 So.2d 826

**STATE v. PAUL.**

No. 37107.

June 21, 1943.

T. F. Hunter and John R. Hunter & Son, all of Alexandria, for appellant.

Eugene Stanley, Atty. Gen., Niels F. Hertz, Sp. Asst. Atty. Gen., and B. F. Thompson, Dist. Atty., and Walter M. Hunter, Asst. Dist. Atty., both of Alexandria, for the State.

PONDER, Justice.

The defendant, Wilmer Paul, was convicted of theft of seven head of cattle valued at $300 and sentenced to serve a

term of six years in the State penitentiary. He has appealed from the conviction and sentence.

The defendant was originally charged with Elmer Odom and Harvey Paul in an affidavit with the theft of the cattle involved in this case. At the time that they were arrested, the three accused were examined separately by the district attorney, and a number of conflicting statements were made by them. They were then examined in the presence of each other and confronted with their contradictory statements. The accused, upon their requests, were permitted to consult with each other, after which conversation, Elmer Odom and Harvey Paul confessed to the commission of the theft, outlining in detail the manner in which it was done, and stated in effect that Wilmer Paul did not participate in the theft. Elmer Odom and Harvey Paul pleaded guilty to the offense and were sentenced to serve a term in the penitentiary. Wilmer Paul was released. After Elmer Odom and Harvey Paul were sentenced, and prior to their removal from the parish jail to the penitentiary, Elmer Odom was questioned by the district attorney and made a statement, which was reduced to writing and signed by him before a notary public and two witnesses, describing the details of the theft and the participants therein. In this statement, he again admitted his guilt and implicated Harvey Paul as well as Wilmer Paul.

After this statement was made by Elmer Odom implicating Wilmer Paul in the theft of the cattle, the district attorney filed an information against Wilmer Paul

charging him with the offense. During the course of the trial, eight bills of exception were taken to the rulings of the trial court.

Bills of exception numbers one, three, four and eight present the most serious questions in this case. The basis of these bills of exception is the statement made by Elmer Odom wherein he implicated Wilmer Paul in the theft.

Bill of exception number one was taken to that portion of the district attorney's opening statement wherein he stated "that he brought two of the accused at different times to his office and that they made statements separately to him." After the exception was overruled, the district attorney continued by stating to the jury:

"Contradictory statements were made by Odom, Wilmer Paul was then confronted with Odom in my office and in his presence I told them that one or the other had lied. I wanted to know who told the truth. After looking at each other for a minute or so, Odom in Paul's presence said, 'I want to talk to Paul privately in the other office, alone.' I said, 'All right.' They left my office and went into the adjoining office and then came back together and Elmer Odom says: 'Harvey Paul and I were the ones who took the cattle.' After that Harvey Paul and Wilmer Paul were in my office together, and they went off to another office and then came returning, Harvey said that Wilmer had taken no part in it, after talking over the matter privately. Confronted with that, the state took the pleas of guilty from the two, Harvey Paul and Elmer Odom and con-

sequently they were sent to the pentientiary. Wilmer Paul was released. After sentence and without any promises of any reward or anything else of that nature, Elmer Odom was questioned and came out with the entire truth."

During the course of the trial, Elmer Odom was called by the district attorney as a witness for the State and asked if Wilmer Paul was with him and Harvey Paul at the time the cattle was stolen. In answer to the question, the witness stated in effect that Wilmer Paul was in no way connected with the theft of the cattle. The district attorney pleaded surprise and asked to be permitted to cross examine and impeach the witness. The district attorney then attempted to question the witness about the contents of the written statement that he had made, after his conviction and sentence, concerning the theft. The defendant's objection was overruled, and the district attorney was permitted to examine the witness with reference to the contents of the written statement. This forms the basis of bill of exception number three.

Bill of exception number four is predicated on the ground that the court, over the objection of the defendant, permitted the district attorney to read the written statement to the jury.

Bill of exception number eight was taken to the ruling of the court allowing the district attorney, in his argument to the jury, to read excerpts from the statement.

■■■ All of the bills of exception aforementioned are dependent on the admissibility of the written statement. It is con-

ceded that the statement was made out of the presence of the accused. The statement of Elmer Odom involving the defendant herein is heresay and not admissible in evidence unless it comes within some exception to the general rule. If the statement had been made prior to trial of any of the parties, it clearly would be a confession on the part of Elmer Odom and admissible only against him, Elmer Odom. State v. Sims, 106 La. 453, 31 So. 71; State of Louisiana v. John Donelon, 45 La. Ann. 744, 12 So. 922. It certainly would not be admissible against a co-defendant separately tried. While the statement was made by Odom after his conviction and sentence, it is nevertheless in the nature of a confession and could not be admitted under this exception to the general rule against a party who did not make it and who was not present when it was made. We know of no other exception to the hearsay rule under which the written statement of Elmer Odom or the proof of its contents by other parties is admissible against the defendant herein.

■■■ Counsel for the plaintiff is under the impression that this inadmissible evidence is admissible to impeach the hostile witness. The hostile witness could only be impeached by legal evidence; if it were otherwise, the fundamental rights of the accused would be invaded. Moreover, the conviction and sentence would have to be set aside, even if the evidence were admissible, for the reason that the trial court did not specially and expressly caution the jury that the impeaching evidence could not be considered as

proof of the defendant's guilt. State v. Reed, 49 La.Ann. 704, 21 So. 732. In fact, the record indicates that the trial court did not instruct the jury at the time that this evidence was admitted as to what effect should be given it.

Since we have arrived at the conclusion that the aforementioned bills of exception are meritorious, there is no necessity to pass on the other bills.

For the reasons assigned, the conviction and sentence are set aside, and the case is remanded to the lower court to be proceeded with according to law.