SANDERS, J., dissents, adhering to his dissent on original hearing.

SUMMERS, J., dissents for the reasons assigned to the original opinion.

BARHAM, J., dissents.

249 So.2d 540

**STATE of Louisiana**

v.

*James C. RAY and Charles E. Hayes.*

No. 50159.

Jan. 18, 1971.

Dissenting Opinion Jan. 26, 1971.

On Rehearing June 7, 1971.

Dissenting Opinion June 14, 1971.

Albert L. Boudreau, Jr., Abbeville, G. Wray Gill, Sr., Geo. M. Leppert, New Orleans, James E. Fontenot, Abbeville, for defendants-appellants.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Harry H. Howard, Asst. Attys. Gen., Bertrand DeBlanc, Dist. Atty., Nolan J. Edwards, Asst. Dist. Atty., Norwood Marcy Lyons, Sp. Asst. Dist. Atty., for plaintiff-appellee.

SANDERS, Justice.

This is a criminal prosecution. The State charged James C. Ray and Charles E. Hayes with the aggravated arson of an automobile belonging to Carl E. Sudderth.

After the court disposed of several motions, the case came to trial, and the jury returned a verdict of guilty. The trial judge sentenced each of the defendants to a term of twenty years in the Louisiana State Penitentiary. They have appealed, relying upon several bills of exceptions reserved in the lower court.

The defendants complain that the trial court allowed the State to impeach its own witness by introducing a prior inconsistent statement and failed to caution the jury that the statement was admitted solely for impeachment of the witness and not as evidence of the guilt of defendants. This complaint raises serious legal questions.

The State called John Landry, who reportedly had a conversation with defendant Ray shortly after the offense. Ray allegedly told Landry: "They took care of that one. [Referring to the automobile dynamited] The apartments lit up like a Christmas tree." When Landry denied that such a conversation occurred, the State was allowed to lay a foundation for impeachment. The State then called Ray Beck, Lieutenant Donald Breaux, and Captain Leon W. Kordek who testified before the jury that John Landry had previously stated to them that such a conversation took place.

Defendants first contend that impeachment was improper. They suggest that the State was not surprised by Landry's testimony since the State was aware that he had denied knowledge of the conversation in a previous trial. This contention, however, lacks merit.

LSA–R.S. 15:487 provides:

"No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements."

Under this statute, impeachment is proper either when the State is surprised or when the witness proves hostile. State v. Willis, 241 La. 796, 131 So.2d 792 (1961); State v. Williams, 185 La. 849, 171 So. 52 (1936); 22 La.L.Rev. 398.

■ The record discloses that the witness was evasive and extremely hostile to the prosecution. The trial judge was forced to intervene in the interrogation to secure clear-cut answers to key questions. In our opinion, this hostility provided a valid basis for impeachment by prior inconsistent statement.

The defendants next assert that the trial judge committed reversible error when he failed to caution the jury that the prior inconsistent statement was admitted only as to the credibility of the witness and not as substantive evidence of defendants' guilt. The State answers that defendants made no specific request for such an in-

struction and no Bill of Exceptions was reserved.

█ Both Bills of Exceptions No. 2, reserved to the overruling of a prayer for oyer, and Bill of Exceptions No. 13, reserved to the admission of the prior inconsistent statement in evidence, complain of the failure of trial judge to explain the manner in which the prior inconsistent statement was to be received by the jury. These bills were reurged in Bill of Exceptions No. 15, reserved to the overruling of the motion for a new trial. Taken together, the bills are adequate to raise the question for appellate review. LSA–C.Cr. P. Arts. 841, 844; State v. Barbar, 250 La. 509, 197 So.2d 69 (1967).

Since 1897, Louisiana has followed the orthodox rule that when a witness other than the defendant is impeached by the admission of a prior inconsistent statement incriminating the defendant, the statement is admissible only on the issue of credibility and not as substantive evidence of the defendant's guilt. See State v. Whitfield, 253 La. 679, 219 So.2d 493

(1969); State v. Barbar, 250 La. 509, 197 So.2d 69 (1967); State v. Willis, 241 La. 796, 131 So.2d 792 (1961); State v. Rocco, 222 La. 177, 62 So.2d 265 (1952); State v. Paul, 203 La. 1033, 141 So.2d 826 (1943); State v. Blassengame, 132 La. 250, 61 So. 219 (1913); State v. Robinson, 52 La.Ann. 616, 27 So. 124 (1900); State v. Reed, 49 La.Ann. 704, 21 So.2d 732 (1897).

Louisiana has also adopted a minority rule that the failure to caution the jury as to the limited purpose of the inconsistent statement is error despite defendant's failure to request such an instruction. See State v. Barbar, supra.

A growing minority of courts now admit such prior inconsistent statements as substantive evidence of guilt to be weighed by the jury.[1] Both the Model Code of Evidence (Rule 503) of the American Law Institute and the Uniform Rules of Evidence (Rule 63) have adopted the substantive evidence rule. Several leading authorities on evidence support it.[2] The unrestricted admission of such statements in

1. See Jett v. Commonwealth, 436 S.W.2d 788 (Ky.1969); Gelhaar v. State, 41 Wis.2d 230, 163 N.W.2d 609 (1969). See also United States v. De Sisto, 329 F.2d 929 (CA 2d Cir.) (Friendly, J.), cert. denied 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964); United States v. Block, 88 F.2d 618, 620 (CA 2d Cir.) (L. Hand, J.), cert. denied 301 U.S. 690, 57 S.Ct. 793, 81 L.Ed. 1347 (1937); Di Carlo v. United States, 6 F.2d 364, 368 (CA 2d Cir.) (L. Hand, J.), cert.

denied 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168 (1925).

2. 3 Wigmore (3d ed.), § 1018 n. 2, p. 687; McCormick on Evidence, § 39, p. 73, et seq. (1954); Maguire, The Hearsay System: Around and Through the Thicket, 14 Vand.L.Rev. 741, 748 (1961); Morgan, Hearsay Dangers and The Application of the Hearsay Concept, 62 Harv.L.Rev. 177, 192–196 (1948).

evidence does no violence to the Confrontation Clause of the United States Constitution. California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

■ The State has strongly urged that we modify our jurisprudence on this subject in order to maintain a proper balance between the interests of the defendant and the State. We have reexamined our jurisprudence in the light of present conditions in criminal justice. We adhere, at least for the present, to the established rule that such prior inconsistent statements are admissible only on the issue of credibility and not as substantive evidence of a defendant's guilt. In compliance with our prior jurisprudence, we must reverse these convictions and order a new trial. See LSA-C.Cr.P. Art. 921.

This case exposes the weakness of our procedural rule that allows a defendant to avail himself of the lack of the cautionary instruction, though he remained silent and made no specific request to the trial judge for the instruction. This no-request rule creates a trap for the unwary judge to the prejudice of the fair and efficient administration of justice.

The requirement of such a request to avoid waiver and warrant appellate enforcement has ample support in the jurisprudence of other states. See 53 Am.Jur., Trial, § 670, p. 516; Daggett v. Atchison, T. & S. F. R. Co., 48 Cal.2d 655, 313 P.2d 557, 64 A.L.R.2d 1283 (1957); State v. DeZeler, 230 Minn. 39, 41 N.W.2d 313; 15 A.L.R.2d 1137 (1950); State v. Cooke, 59 Wash.2d 804, 371 P.2d 39, 94 A.L.R.2d 564 (1962). It is based upon the sound principle that the defendant should make known to the trial judge his desire for such a cautionary instruction and afford him an opportunity to give it.

■ Accordingly, in cases tried hereafter, we shall require a defendant to specifically request the trial judge to give such a limiting instruction in order to avail himself of its omission. To this extent, State v. Barbar, supra, is prospectively overruled.

The remaining bills of exceptions relied upon by defendants are either without merit or will not necessarily arise upon a new trial. We note specifically only one of them.

The defendants reserved Bill of Exceptions No. 7 to the overruling of their plea of former jeopardy. They base the plea upon their previous trial and acquittal of simple arson of a gas pipeline. At that trial, evidence of the presently charged offense was admitted to show system and intent under LSA-R.S. 15:446. Because of the admission of this evidence, defendants contend they are now being subjected to double jeopardy contrary to the holding of the United States Supreme Court in

Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

■ The trial judge correctly overruled this plea. The first offense of which defendants were acquitted was a different crime from the present one. It occurred on a different date and under different circumstances. Although evidence of the present offense was admitted at the trial, it was received only for a limited purpose. LSA–R.S. 15:446 specifically provides that such evidence is not proof of the offense charged. Hence, the later trial for the present offense does not constitute double jeopardy either under Article 596 of the Louisiana Code of Criminal Procedure or under the recent holding of the United States Supreme Court in Ashe v. Swenson.

In the Ashe case, six men were robbed at the same time by several masked gunmen. The defendant was tried and acquitted in a state court of the robbery of one of the victims. Later, he was tried and convicted of the robbery of a second victim. The contested factual issue at both trials was whether defendant was one of the robbers. The United States Supreme Court held that the rule of collateral estoppel, embodied in the Fifth Amendment's guaranty against double jeopardy, barred the second trial. Since the essential features of that case differ from the present one, we conclude it has no application here.

For the reasons assigned, the convictions and sentences are reversed, and the case is remanded to the Fifteenth Judicial District Court for a new trial.

SUMMERS, Justice (dissenting).

This case is one of a series of incidents attending strike breaking activities connected with labor difficulties in the Abbeville area in 1967. Specifically these defendants are charged with arson in the same locality for the second time, having been acquitted of the first charge.

According to the State's theory of the case, on September 6, 1967 defendants dynamited and destroyed a Cadillac automobile belonging to Carl Suddereth, a superintendent of one of the companies involved in the labor controversy. At the time, the Cadillac was parked in the street near an apartment which was occupied. Missiles from the dynamited automobile struck the nearby building.

In preparation for the crime, defendant J. C. Ray contacted one Vernon Cuvillier and told him he wanted to meet with him and defendant Charles E. Hayes at the Underpass Bar that night. The three allegedly met at the bar and went for a ride in Ray's car. During this ride Ray said he wanted them to blow up Suddereth's Cadillac and a pick-up truck belonging to a man named Thibeaux, who had failed to bring pickets to a struck job site the day before. Suddereth was referred to,

as a superintendent of Dresser Construction Company, a firm which would not agree to "work union".

Ray also informed Hayes and Cuvillier that Rodney Miller would have the dynamite. When the plans were laid the trio returned to the Underpass Bar. Later that evening, according to the State's theory, Hayes and Cuvillier drove the Hayes' station wagon to Miller's home, where the latter directed them to a nearby barn from which they obtained dynamite.

Hayes and Cuvillier then drove to the site of the Cadillac and pick-up truck, lighted the dynamite fuses and threw the dynamite under each vehicle. The fuse under the pick-up truck fizzled out and did not explode but the dynamite under the Cadillac exploded and damaged it to the extent of $4,500, a total loss.

From a conviction and sentence to a term of twenty years in the penitentiary these defendants have appealed.

Their conviction has been set aside and a new trial ordered. In my view this Court's decision should not stand.

The sole basis for overturning the conviction is the defense contention that the trial judge committed reversible error when he failed to caution the jury that a prior inconsistent statement of a witness who was being impeached was admitted only as to the credibility of the witness and not as substantive evidence of defendant's guilt.

In defending against this contention the State asserts no objection was made during the course of the trial nor was a bill of exceptions reserved which could serve to present the issue for appellate review.

This Court finds "Both Bills of Exceptions No. 2, reserved to the overruling of a prayer for oyer, and Bill of Exceptions No. 13, reserved to the admission of prior inconsistent statement in evidence, complain of the failure of trial judge to explain the manner in which the prior inconsistent statement was to be received by the jury. These bills were reurged in Bill of Exceptions No. 15, reserved to the overruling of the motion for a new trial." Articles 841 and 844 of the Code of Criminal Procedure and State v. Barbar, 250 La. 509, 197 So.2d 69 (1967), are cited by the Court as authority for its conclusion.

In my view these findings are erroneous and are not supported by the record.

Bill of Exceptions No. 2, which is said to present the issue, is a bill based primarily upon the contention that the answers to a prayer for oyer were insufficient. This bill was filed on July 15, 1970 months after the verdict on April 25, 1969. It incorporates the issue that the trial judge failed to instruct regarding the limited effect to be given impeaching testimony as an argument entirely disconnected and

unrelated to the bill. The bill was reserved to overruling defendant's prayer for oyer—nothing more.

Bill of Exceptions No. 13 is another protracted recitation filed on January 16, 1970 lumping together a host of unrelated matter, none of which contain any objection during the trial to the judge's failure to instruct the jury concerning the limited effect to be given to impeaching testimony. Nor was any motion for a mistrial denied on account of the admission of unqualified testimony. The question is raised for the first time in the bill by way of argument. This was nine months after trial and verdict and long after the law permits an objection to a trial irregularity.

Bill of Exceptions No. 15 follows the pattern of the other bills. It contains a lengthy recitation of unrelated matters occurring at the trial none of which relate to the issue we must determine, which is: Was a bill of exceptions reserved to a court ruling concerning the issue which the majority has made the basis for setting aside this conviction? The answer to this question is that no such bill was ever reserved during the trial.

The Barbar Case does stand for the proposition that when a witness other than the defendant is impeached by the admission of a prior inconsistent statement incriminating the defendant, the statement is

admissible only on the issue of credibility and not as substantive evidence of defendant's guilt. However, the issue was raised in that case by objection to the impeachment of the witness, to the alleged hearsay content of a written statement used for impeachment and to the introduction of the prior written statement used for impeachment. All of these objections were overruled and bills were reserved to these rulings and embodied in a perfected bill which this Court considered on Appeal.

Other cases cited in support of the Court's position are likewise distinguishable from the case at bar and do not support the Court's position. In State v. Whitfield, 253 La. 679, 219 So.2d 493 (1969) the question was preserved for appellate review by an objection to the introduction of a police report which was being used to impeach a witness' testimony. When the objection was overruled a bill was reserved.

In State v. Willis, 241 La. 796, 131 So. 2d 792 (1961) bills were reserved to the admission of prior inconsistent statements made by the accused as proof of her guilt, despite defense counsel's timely request that the jury be instructed that this hearsay evidence was receivable only for impeachment purposes.

Again in State v. Rocco, 222 La. 177, 62 So.2d 265 (1952), a letter was being introduced to contradict the defendants' testimony at the trial. Counsel objected and

reserved a bill which was the basis for appellate consideration of the question.

State v. Paul, 203 La. 1033, 14 So.2d 826 (1943) involved a prosecution for theft in which the district attorney was attempting to impeach a witness with the contents of a written statement previously given by the witness. Defense counsel objected to the attempt to impeach the witness and was overruled. A bill was reserved which formed the basis for considering the trial judge's failure to instruct concerning the limited effect to be given the impeaching evidence.

Objection was made to the State's attempt to impeach a defense witness in State v. Blassengame, 132 La. 250, 61 So. 219 (1913), and a bill reserved to the Court's ruling. On this basis the Court was enabled to consider the contention that the impeaching testimony was permitted to go to the jury as substantive evidence against the defendant, with no warning that it was admitted merely for the purpose of impeaching the witnesses' credibility.

A refusal to grant a mistrial was the basis for a bill raising the question in State v. Robinson, 52 La.Ann. 615, 27 So. 124 (1900).

In State v. Reed, 49 La.Ann. 704, 21 So. 732 (1897), a statement of facts was prepared and signed by the Clerk of Court which counsel erroneously felt would serve in lieu of a bill of exceptions under a re-

cent act of the Legislature. The issue was nevertheless considered since the case involved murder and the statute erroneously relied upon was recently enacted.

None of these cases relied upon by the Court, therefore, are authority for considering the issue upon which the case at bar turns.

The positive law of this State on the subject is clear and unambiguous. Article 841 of the Code of Criminal Procedure announces the basic rule in these terms:

> *An irregularity or error in the proceedings cannot be availed of after verdict unless it is objected to at the time of its occurrence and a bill of exceptions is reserved to the adverse ruling of the court on such objection.* Failure to reserve a bill of exceptions at the time of an adverse ruling of the court operates as a waiver of the objection and an acquiescence in the irregularity or ruling. (Emphasis added.)

My view, concisely stated, is that if the trial judge erroneously failed to instruct the jury as to the limited effect to be given the impeaching testimony, defense counsel should have either objected to that failure or moved for a mistrial on account of that failure and reserved a bill of exceptions to the judge's ruling if the ruling either denied the limiting instruction or refused the mistrial. Failure of defense counsel to object, in the language of Arti-

cle 841, "operates as a waiver of the objection and an acquiescence in the irregularity or ruling."

Moreover, Article 921 of the Code of Criminal Procedure has particular pertinence here. A limiting instruction, though meager, was given to the jury by the judge in connection with the testimony of the impeaching witness. The following questions and answers illustrate the judge's statements relating to the limiting effect of the impeaching testimony, viz:

Q. (By Mr. DeBlanc) Lt. Breaux, what statement did John Landry give you and Mr. Beck about the explosion which totaled the Carl Suddereth Cadillac on September 6, 1967?

A. Well, Mr. Landry advised us that J. C. Ray planned it. He planned the bombing of the Suddereth vehicle. And he runs into Ray and he—

Mr. Gill: May it please Your Honor, that is not impeachment. That is not impeachment of what this gentleman Mr. Landry testified to.

The Court: I think the impeachment would have to be restricted to the testimony.

Mr. Gill: And I ask Your Honor to please advise the gentlemen of the jury to disregard that statement.

The Court: I would so advise the jury to disregard the statement made to the effect that J. C. Ray planned the bombing.

It is to be noted, also, that much of the testimony concerning this issue was elicited on cross-examination by defense counsel. Surely evidence received under this circumstance is not subject to the rule of State v. Barbar.

My study of the record demonstrates that the evidence of guilt connected with the impeaching testimony added little to the State's case. The proof of the crime was otherwise established beyond a reasonable doubt by more direct and positive evidence.

As Article 921 of the Code of Criminal Procedure declares:

A judgment or ruling shall not be reversed by an appellate court on any ground unless in the opinion of the court after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right.

No injustice has occurred here as a study of this record will plainly reveal. Furthermore the basis for overruling this case is the breach of a jurisprudential rule of evidence—not a substantial violation of a constitutional or statutory right as Article 921 very emphatically requires. Not only is the rule forming the basis for over-

ruling this conviction not a statutory right, it is a discredited rule of law which the Court discards when it overrules the cases announcing that rule.

Thus, on the basis of the foregoing, this Court should find that the issue of limiting instructions concerning impeaching testimony is not properly presented for appellate review. However, not only did the Court improperly consider the issue but it overruled State v. Barbar and the cases which have applied the rule. In doing so it made the overruling prospective in its effect, but the rule was permitted to apply to the case at hand and brought about a reversal. Herein lies another reason why the majority decision should not stand.

The overruling should have applied to the case at bar. So far as I can ascertain, this Court has never adopted the practice of overruling its decisions prospectively only. This Court's position on this subject is stated by Mr. Justice Rogers in Norton v. Crescent City Ice Mfg. Co., 178 La. 135, 150 So. 855 (1933):

> * * * the decisions of a court of last resort are not the law, but only the evidence of what the court thinks is the law. The law as construed in an overruled case is considered as though it had never existed, and the law as construed in the last case is considered as though it has always been the law. As a general rule, the law as construed in the last decision

operates both prospectively and retrospectively, except that it will not be permitted to disturb vested rights.

At this point it is pertinent to observe that a precedent concerning a rule of evidence, such as the rule requiring limiting instructions regarding impeaching evidence, may more readily be departed from, since no one has a vested right in a rule of evidence. 20 Am.Jur.2d, Courts, § 199.

In my view, although I recognize that courts have exercised the power to overrule a decision in an earlier case wholly prospectively and to completely deny retroactive effect to an overruling decision, this Court has never done so. State ex rel. Day v. Rapides Parish School Board, 158 La. 251, 103 So. 757 (1925). The practice is subject to the objection that a purely prospective overruling is an unconstitutional violation of a legislative prerogative.

Mr. Justice Land expressed this Court's understanding of its function even after the notion of prospective overruling of decisions had gained acceptance in some courts. He said:

> The functions of this court are strictly judicial, and are restricted to the interpretation of laws as they exist upon the statute books. What the law ought to be is not a juristic question, but is a matter which addresses itself solely to the Legislature of the state. (Carpenter v. Metropolitan Life Ins. Co., 182 La. 813, 162 So. 630 [1935])

This Court is not authorized by our Constitution to grant advisory opinions. Our jurisdiction is limited to the decision of cases or controversies. Purely prospective overruling, as the Court attempts here, is an effort to extend the judicial powers of the Court purporting to affect rights of nonparties instead of deciding the case at hand. Thus, the Court's statement overruling State v. Barbar prospectively is merely dictum. If State v. Barbar is to be overruled it should be overruled as to the case at bar and the conviction should be sustained.

The majority has reached a singular decision. In one bold stroke the opinion sets aside the requirements long recognized in our cases and in the Code of Criminal Procedure (Article 841, et seq.) for obtaining appellate review; and the decision brushes aside the long-established concept of this Court's function and embarks upon a program of doubtful judicial activity by prospectively overruling a bad rule of evidence. In so doing the conviction of these defendants is set aside contrary to the clear provisions of Article 921 of the Code of Criminal Procedure.

I respectfully dissent.

### On Rehearing

TATE, Justice.

The defendants were convicted of aggravated arson, La.R.S. 14:51, and sentenced to twenty years in the state penitentiary. On our original hearing on their appeal, we concluded, one justice dissenting, that their conviction must be reversed on the basis of a long-settled jurisprudential rule applicable at the time of trial. We granted rehearing because of the State's earnest insistence of error. Upon reconsideration, we adhere to our original view that the convictions must be reversed and the matter remanded for re-trial.

### Failure to Caution Jury as to Effect to be Given to Prior Inconsistent Statements

The context circumstances are as follows:

The State called Allen Ray Landry as a witness. The prosecutor asked Landry if he knew anything about the dynamiting with which the defendants are charged. Landry replied that all he knew about it was what he read in the newspapers.

Pleading surprise, the State proceeded to question Landry about prior inconsistent statements allegedly given by him to three police officers. The defendant made a general objection to all testimony "along that line" of prior inconsistent statements and reserved a bill thereto. Tr. 510. The perfected bill was reserved "to the Court's procedure in impeaching a witness called by the State." Bill of Exceptions No. 13.

The police officers in question subsequently testified that, several months after the dynamiting, they had interviewed Lan-

dry... Landry had informed them, they said, that, on the day following the dynamiting, the defendant Ray had told him "that they had taken care of the vehicle" [apparently, the dynamited Cadillac] and "the place lit up like a Christmas tree."

The settled rule in Louisiana is that, when a witness other than the defendant is impeached by the admission of a prior inconsistent statement, the statement is admissible only on the issue of credibility and not as substantive evidence of the defendant's guilt. State v. Whitfield, 253 La. 679, 219 So.2d 493 (1969) and other decisions cited by our original opinion.

Further, in an unbroken line of decisions stemming from State v. Reed, 49 La.Ann. 704, 21 So. 732 (1897), this court had held that, when such impeachment testimony is introduced, it is reversal error for the trial court not to caution the jury at the time of introduction as to the limited purpose of the inconsistent statement (for impeachment, not as substantive proof of guilt); and moreover, due to the grave prejudice to an accused so sustained, that such error is ground for reversal even though the defendant failed to request such an instruction at the time the (merely) impeaching testimony is introduced.

We have most recently adhered to this view in State v. Barbar, 250 La. 509, 197 So.2d 69 (1967), citing the reasons therefor and the unbroken jurisprudence to this effect. In this recent unanimous decision, we specifically stated that, "in the absence of specific statutory authority to the contrary, this court should continue to follow the precedent already set down by its previous decisions." 197 So.2d 72.

In our original opinion, we adhered to the view that this jurisprudential rule, in effect at the time this case was tried, required reversal under the law applicable at the time of trial, sentencing, and appeal. We therefore reversed.

■ However, as to all trials to take place following the finality of this decision, we overruled State v. Barbar and its predecessor decisions, for reasons more fully stated by us in our original opinion. The effect of this prospective overruling, to which we adhere on rehearing, is that in cases tried hereafter we shall require a defendant to specifically request the trial judge to give the limiting instruction as to the effect of impeachment testimony, in order to avail himself of its omission.

The State does not contend that the law is otherwise than as above summarized, nor that in fact the trial judge here gave the caution as to the limited effect of impeachment testimony as required by such unbroken former jurisprudence.[1]

1. The justice dissenting from our original opinion noted that the trial court had sustained an objection to an isolated question in the testimony of *one* of the police

The principal thrust of the State's contention is that *Barbar* should be overruled because it is wrong, since by the 1966 Louisiana Code of Criminal Procedure an error cannot be complained of on appeal unless objected to at the time of occurrence and unless at this time a bill of exceptions is reserved. Article 841.

However, as the Official Revision Comment to this article notes, the Article 841 of the 1966 Code involves no change in statutory regulation of this particular question. This article's predecessor provision, La.R.S. 15:502 (1950) (incorporating earlier statutory enactments to the same effect) provides, in wording substantially identical to the present Code article's pertinent provision: "No error, not patent on the face of the record, can be availed of after verdict, unless objection shall have been made at the time of the happening of such error and unless at the time of the ruling on the objection a bill of exceptions shall have been reserved to such adverse ruling." [2]

officers and had instructed the jury to disregard *this* statement. The State does not contend on rehearing that such constituted the limiting instruction required under *Barbar*.

2. Compare Article 841: "An irregularity or error in the proceedings cannot be availed of after the verdict unless it is objected to at the time of its occurrence and a bill of exceptions is reserved to the adverse ruling of the court on such objection." Likewise, the provisions of present Article 920 that the appellate court can consider only formal bills of exceptions and errors patent on the record were

Thus, for over seven decades the law of Louisiana has been, as stated by *Barbar* in 1967: Despite any statutory requirement that an objection be noted and a bill reserved at the time an alleged error is committed, nevertheless (in view of the prejudice otherwise sustained by an accused) a trial judge is under an affirmative duty, even in the absence of request, to instruct the jury at the time impeachment testimony is introduced that such is *not* evidence of guilt; that it is only evidence of a prior statement reflecting upon the credibility of a witness who denied at the trial having made such statement, in proof only of which is the impeaching testimony offered.

We should note, as stated in our original opinion, that by virtue of Bill No. 13 [3], as well as of Bills Nos. 2 and 15 (see Art. VIII), the testimony of Landry and of the three impeaching police officers is before us for review, in connection with the impropriety alleged in introducing such impeachment testimony. Under virtually

substantially contained in former La.R.S. 15:558 (1960): "Unless the error is patent on the face of the record, an *appellate court can not consider or determine any question which was not submitted to and passed upon by the trial judge.*"

3. As earlier stated, that this was reserved as to the trial court's sustaining a general objection as to the entire line of evidence concerning prior inconsistent statements, with the bill of exception questioning the procedure used by the trial court in impeaching a witness called by the State.

identical circumstances, presenting the identical issue now before us for review, we so held in State v. Barbar, 250 La. 509, 197 So.2d 69 (1967).

The State, conceding that for us to affirm the conviction we must overrule *Barbar*, asks us to overrule this latter decision retrospectively. The effect of such overruling would be to require us, now, to affirm only on the basis of a different rule we expressly adopt today for the purpose of affirming. To do so in a *criminal* prosecution—to change the rules in the middle of the game—to apply a new rule just so as to affirm a conviction; and thus to discard a rule just recently reaffirmed and in existence at the time of the trial for over seven decades, by reason of which we are obliged to reverse—amounts to such fundamental unfairness as to verge on a denial of due process. See James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961).

### Decree

For the reasons assigned, we therefore reinstate our original decree reversing the convictions and sentences. The case is remanded to the Fifteenth Judicial District Court for further proceedings in accordance with law.

Original decree reinstated, and case remanded.

McCALEB, Chief Justice (concurring).

I agree that the failure of the judge to give the jury cautionary instructions, that impeaching evidence may not be considered substantive proof in determining the guilt of an accused, requires the granting of a new trial. However, I seriously question the right of the majority to overrule *prospectively* the long-settled jurisprudential rule, anent cautionary instructions regarding impeaching evidence, believing it is beyond our power to attempt to bind the Court, in futuro, by such dictum.

On this phase of the case, I agree with the observations of Mr. Justice Summers in his dissenting opinion on original hearing, even though he and I would reach, ultimately, a different result. For I adhere firmly to the view expressed in State v. Willis, 241 La. 796, 131 So.2d 792, wherein it is stated:

"* * * In order to minimize the harm which may ensue from the reception of hearsay when used as impeaching evidence, it is necessary to caution the jury as to the limited purpose for which it may be considered before it hears such evidence, rather than to include it later in an instruction which the jury will have to apply in retrospect."

I concur in the result.

HAMLIN, Justice (dissenting).

After re-examination of the record, I am of the view that defendant received a fair trial.

Herein, there is no miscarriage of justice, no prejudice to the substantial rights of the accused, nor a substantial violation of a constitutional or statutory right. Art. 921, C.Cr.P.

I respectfully dissent.

SUMMERS, Justice (dissenting).

Conceding arguendo that this Court has, in the past, applied the rule that when impeachment testimony is introduced, it is reversible error for the trial court not to caution the jury at the time of introduction as to the limited purpose of the inconsistent statement (for impeachment, not as substantive proof of guilt); and that such error is ground for reversal even though the defendant failed to request such an instruction at the time the impeaching testimony is introduced. State v. Whitfield, 253 La. 679, 219 So.2d 493 (1969); State v. Barbar, 250 La. 509, 197 So.2d 69 (1967).

We must now realize, however, that the Whitfield and Barbar Cases were decided without reconciling the rule applied there with Articles 841, 845, 920 and 921 of the Code of Criminal Procedure which became

effective January 1, 1967. These articles provide:

Art. 841. When bill of exceptions must be reserved

An irregularity or error in the proceedings cannot be availed of after verdict unless it is objected to at the time of its occurrence and a bill of exceptions is reserved to the adverse ruling of the court on such objection. Failure to reserve a bill of exceptions at the time of an adverse ruling of the court operates as a waiver of the objection and as an acquiescence in the irregularity or ruling.

This requirement shall not apply to:

(1) A ground for arrest of judgment under Article 859, or the court's ruling on a motion in arrest of judgment; or

(2) The court's ruling on a motion for a new trial based on the ground of bills of exceptions reserved during the trial.

Art. 845. Submission and signing of formal bills of exceptions

The bills of exceptions reserved during the trial shall be submitted to the court and signed by it at any time prior to the order of appeal the court shall fix a later date for the submission and signing of bills of exceptions, which extended date must be not later than the return day for the appeal. The court must sign the

formal bills of exceptions, but may attach per curiam comments stating its reasons for the rulings. If the court refuses to sign a formal bill of exceptions, its refusal may be reviewed on a writ of mandamus.

Art. 920. Scope of appellate review

The following matters and no others shall be considered on appeal:

(1) Formal bills of exceptions that have been submitted to and signed by the trial court in accordance with Article 845, whether or not the bills of exceptions were made a ground for a motion for a new trial; and

(2) Any error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.

Art. 921. Matters not grounds for reversal

A judgment or ruling shall not be reversed by an appellate court on any ground unless in the opinion of the court after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right.

Application of these articles to the facts and circumstances of this case requires that this Court refuse to review an irregularity or error in the proceedings after verdict, unless it is objected to at the time of its occurrence and a bill of exception is reserved to the adverse ruling of the Court on such objection. La.Code Crim.Proc. Art. 841. That is to say, the rule of the Whitfield and Barbar Cases cannot exist side by side with the quoted codal articles.

By its decision in this case, even though vigorously urged to do so by the State in its brief on rehearing, the Court refuses to apply the legislature's mandate. Instead the majority adheres to and applies a rule, the merit of which it repudiates, but only prospectively; a rule which the legislature in the quoted articles has refused to recognize as an exception to the scope of review on appeal in criminal cases; a rule the quoted articles have effectively eliminated from our law.

The opinion of the majority on rehearing gives only footnote attention to Article 920 which limits the scope of review to bills of exceptions properly perfected. In so doing it relegates to a subordinate role in this decision the controlling positive law on the subject.

I respectfully dissent.