ROSEMARY LEDET, Judge.
bin this criminal appeal, the defendant, Jeremy Patterson, seeks review of his conviction and sentence for second degree murder. For the reasons that follow, we affirm his conviction and sentence.[1]

STATEMENT OF THE FACTS AND THE CASE

On July 20, 2008, at approximately 10:20 a.m., Kerry Emery[2] was shot and killed near the 3300 block of Clouet Street in New Orleans, Louisiana., On November 6, 2008, Mr. Patterson — who also went by the nickname “Bambi” — and Tyrone Reynolds were jointly charged by a grand jury indictment with second. degree murder, a violation of La. R.S. 14:30.1.[3] On November 17, 2009, Mr. Patterson appeared for arraignment • and entered a plea of not guilty.
*623 On June 15, 2010, a jury trial commenced. On June 17, 2010, the jury found Mr. Patterson guilty as charged. On August 25, 2010, Mr. Patterson was sentenced]^ life imprisonment without benefit of probation, parole, or suspension of sentence. This court reversed Mr. Patterson’s conviction due to the erroneous refusal of the district court to allow counsel to back strike jurors. State v. Patterson, 11-0648 (La.App. 4 Cir. 8/24/12), 98 So.3d 439 (unpub.). This court-vacated his sentence, and remanded the matter to the district court for a new trial. Id. The Louisiana Supreme Court granted the State’s writ application, but affirmed this court’s decision. State v. Patterson, writ granted, 12-2042 (La.12/14/12), 104 So.3d 426, aff'd, 12-2042 (La.3/19/13), 112 So.3d 806.
On April 12, 2013, Mr. Patterson again appeared for arraignment and entered a plea of not- guilty. Mr. Patterson’s second trial was scheduled to commence on April 7, 2014. On April 3, 2014, the State filed a motion to declare one of its two eye-witnesses, Jules Gettridge, unavailable.[4]
On the morning of trial, during a pretrial hearing, the State moved to have its witness, Terrance Williams,[5] declared unavailable. The State argued that Mr. Williams was subpoenaed to appear at 9:00 a.m. on the morning of trial. The State further explained that it made'several attempts to contact Mr. Williams to confirm his appearance in court. Wayne Rumore, an investigator with the Orleans • Parish District Attorney’s Office, testified during the pre-trial hearing that on multiple occasions he went to several different addresses that he found • associated with Mr. I'sWilliams'in New Orleans and Chalmette, Louisiana. Mr. Rumore,-however, was unable to locate Mr. Williams. The State further explained that Mr. Williams, finally contacted the District Attorney’s office four days before trial and gave conflicting statements, regarding whether he would appear at trial. Defense counsel explained that Mr. Williams informed him that he woulcj be appearing as a witness. Despite defense counsel’s objections, the district court found that Mr. Williams failed to comply with the subpoena, issued an alias capias, and declared him, unavailable.
Following the pre-trial hearing, Mr. Patterson’s second jury trial commenced. On the afternoon of the first day of trial, the transcript of Mr. Williams’ testimony from Mr. Patterson’s first trial was read into the record.[6] On the second day of trial Mr. Williams appeared, in court and testified as. a defense witness."-,.On April-8, 2014, Mr..Williams recanted his testimony *624 from Mr. Patterson’s first trial, in which he stated that, although he did not see the shooting, Mr. Emery made a dying declaration to him identifying Mr. Patterson as his killer. Mr. Williams initially testified that, he did not see the shooting occur; however, he subsequently testified that he witnessed Mr. Reynolds shooting Mr. Emery. Mr. 14Williams further testified that Mr. Emery’s last words as he lay dying on Clouet Street were: “Move me out of the sun.”
On April 8, 2014, the jury found Mr. Patterson guilty as charged of second degree murder. On May 2, 2014, the district court denied Mr. Patterson’s motion for a new trial and for post-verdict judgment of acquittal and sentenced Mr. Patterson to life imprisonment without benefit of probation, parole, or suspension of sentence. This appeal followed.

DISCUSSION

In his sole assignment of error, Mr, Patterson, through counsel, first contends that the district court erred by declaring Mr. Williams’ unavailable and allowing the State to introduce his prior testimony.[7] Consequently, Mr. Patterson argues, the district court violated his Sixth Amendment right of confrontation because Mr. Williams was available to testify on the second day of trial. Furthermore, Mr. Patterson conténds that the district court’s error was not harmless because Mr. Williams’ prior inconsistent statement, which was read to the jury on the first day of trial, was used as substantive evidence of guilt. We address these two issues separately.

Witness Unavailability

The Confrontation Clause in the Sixth Amendment of the United States Constitution provides that, “[i]n all criminal prosecutions, the accused shall enjoy |fithe right ... to be confronted with the witnesses against him.” It is well-established that this bedrock procedural guarantee applies to both federal and state prosecutions. Crawford v. Washington, 541 U.S. 36, 42, 124 S.Ct. 1354, 1359, 158 L.Ed.2d 177 (2004) (citing Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965)). In Crawford, the United States Supreme Court held that the Sixth Amendment acts as an absolute bar on the “admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination.” 541 U.S. at 53-54, 124 S.Ct. at 1365; see also State v. Cavalier, 14-0579, p. 6 (La.App. 4 Cir. 6/19/15), 171 So.3d 1117, 1122.
Furthermore, La. C.E. art. 804(A) provides that a declarant is “unavailable as a witness” when he “cannot or will not appear in court and testify to the substance of his statement made outside of court.”[8] See State v. Johnson, 13-0343, p. 18 (La.App. 4 Cir. 10/1/14), 151 So.3d 683, 695, writs denied, 14-2288, 142309 (La.8/28/15), 175 So.3d 965. After the court has de- *625 dared a witness unavailable, a party may offer “[t]estimony given as a witness at another hearing of the same or a different proceeding, if the party.against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.” ' La. C.E. art. 804(B)(1).
IfiThe determination of whether a witness is unavailable is a preliminary question for the trial court. See La. C.E. art. 104(A); State v. Ball, 00-2277, p. 26 (La.1/25/02), 824 So.2d 1089, 1112. The determination as to whether a witness is unavailable is reviewed for manifest error and will not be disturbed on appeal absent an abuse of discretion. Ball, 00-2277 at p. 26, 824 So.2d at 1112. This court has noted that “[e]ven when the witness is determined to be unavailable, the use of the prior testimony must not violate the defendant’s right to confrontation under the Sixth Amendment.” Johnson, 13-0343 at pp. 18-19, 151 So.3d at 695 (citing State v. Hills, 379 So.2d 740, 743-44 (La.1980); State v. Pearson, 336 So.2d 833, 835 (La.1976)). It is well-settled that, in order to protect this constitutional right, the following conditions must be met before allowing an unavailable witness’ prior testimony to be introduced into evidence:
(1) defendant must have been represented by counsel at the earlier hearing; (2) the witness testified under oath; (3) the witness was cross-examined or else there was a valid waiver of the right to cross-examination; (4) at the time of the trial, the witness (whether out of state or not) is unavailable or unable to testify; and (5) the state has made a good faith diligent effort to obtain the presence of the witness, including by its out-of-state subpoena, powers where appropriate.
Hills, 379 So.2d at-743-44 (citations omitted); see also Ball, 00-2277 at p. 26, 824 So.2d at 1112; Johnson, 13-0343 at p. 19, 151 So.3d at 695.[9]
■ ’Mr. Patterson contends that the district court abused its discretion by declaring Mr. Williams’ unavailable for trial, Mr. Patterson argues that the district ^prematurely found that Mr. Williams could not, or would - not, appear in court and testify, as provided by La. C.E. art. 804(A). Mr. Patterson claims that defense counsel informed the district court on the first day of trial that Mr.- Williams was willing to- testify and that he was available on the second day of trial. . By prematurely declaring Mr. Williams unavailable and allowing the State to introduce his prior testimony, the district court, Mr. Patterson contends, violated the Sixth Amendment right of confrontation.
Mr. Patterson further contends that the State prematurely moved the have Mr. Williams declared unavailable. According to, Mr. Patterson, the State was. aware that Mr. Williams would recant his previous testimony. Therefore, only one hour after Mr. Williams was required by the subpoena to arrive, the State moved to declare him unavailable. Mr. Patterson also contends that the State was aware that Mr. Patterson’s trial would only last two days; thus, it should have waited until the second day of trial for Mr. Williams to appear.
On the other hand, the State contends that all the Hills requirements were satisfied. The State further contends that the district court did riot abuse its discretion by declaring Mr. Williams unavailable given his, unwillingness to cooperate with the District Attorney’s office.
*626 During the pre-trial hearing on the morning of trial, the State explained that, after multiple failed attempts to contact him, Mr. Williams called Assistant District Attorney Lynn Schiffman from a blocked number on April 3, 2014, and he stated that he would not be appearing in court. After using several expletives and abruptly Lending the telephone call with Ms. Schiff-man, Mr. Williams called her back and stated that he would be in court at 9:00 a.m. on April 7, 2014. He also informed Ms. Schiffman that he would call her at 5:00 p.m. on April 4, 2014, but he failed to do so. By 10:03 a.m. on the morning of trial, Mr. Williams had failed to appear.
Defense counsel argued that the Stafe’s motion was premature and explained as follows:
[T]he witness has also contacted me by telephone and said he was going to appear as a witness. I asked him if he would come to my'office.* He didn’t come" to my office on Saturday, but he did tell me that he would be here* tomorrow morning.
Defense counsel further stated that Mr. Williams acknowledged that his mother received a subpoena and that he informed Mr. Williams that he had to appear in court. The State noted that the subpoena required Mr. Williams to appear on April 7,2014. '
As discussed above, Mr. Rumore, an investigator for the District Attorney’s Office, testified during the pre-trial hearing regarding ‘ his efforts to contact Mr. Williams and secure his appearance in court. Mr. Rumore testified that he made several unsuccessful attempts to locate Mr. Williams. ' Mr. Rumore testified that he went to Mr. Williams’' mother’s house ori five separate occasions, to Mr. William’s girlfriend’s house on three occasions, and once to Mr. Williams’ aunt’s house. Mr. Rumore spoke to Mr. Williams’ aunt and his mother, both of whom refused to provide Mr. Williams’ whereabouts. Mr. Williams’ mother informed 'Mr. Rumore that “they were afraid.” Mr. Rumore testified that he was never able to locate Mr. Williams and never spoke to Mr. Williams.
|9The record establishes that the requirements set forth in Hills, supra, were satisfied; Mr.-Patterson, was represented by counsel at his first trial. Mr. Williams testified under -oath and was cross-examined by counsel'for Mr. Patterson, during the first trial. At the time 'Mr. Patterson’s second trial began on April -7, 2014, Mr. Williams was unavailable — he.failed to-appear at trial; he previously informed the State that he would not appear at trial, but he informed counsel for Mr. Patterson that he would appear at trial on April 8, 2014. In addition, despite defense counsel’s assertions - that Mr. Williams claimed he would appear on the second day of trial, defense . counsel ' admitted - that Mr. Williams failed to attend a pre-trial meeting with him. Lastly, the State made a good faith effort to procure Mr. Williams’ presence at the second trial. According to defense' counsel, Mr. Williams’ mother received the subpoena, and Mr. Williams was aware of the day on which he-was ordered to appear in court. The State’s investigator, Mr.. Rumore, testified that although he made several attempts, he was never- able to locate Mr. Williams. -;
Although Mr. Patterson argues that the district court should have waited one day before declaring Mr. Williams unavailable, he cites no support for this contention. The district court found that the State made a good faith effort to make the witness, Terrance Williams, available to testify, but ultimately had been unsuccessful. We cannot say that the trial court abused its discretion in finding Mr. Williams unavailable. As discussed above,-the Hills *627 requirements to protect Mr. Patterson’s right to confrontation have been-met.
| TnHarmless Error
Even if the district court erred in allowing the State to introduce Mr. Williams’ prior testimony, the error was harmless under the circumstances. It is well-settled that Confrontation Clause violations are subject to a harmless error analysis. Johnson, 13-0343 at p. 21, 151 So.3d at 697 (citing State v. Welch, 99-1283, p. 6 (La.4/11/00) 760 So.2d 317, 321); see also State v. Henderson, 13-0526, p. 12 (La.App. 4 Cir. 2/19/14), 136 So.3d 223, 230. The admission of hearsay testimony “is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial.” State v. Williams, 15-0866, p. 8 (La.App. 4 Cir. 1/20/16), 186 So,3d 242 (citing State v. Johnson, 389 So.2d 1302, 1306 (La.1980)). “The verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial is surely unattributablé to the error.” State v. Broadway, 96-2659, p. 24 (La.10/19/99), 753 So.2d 801, 817 (citing Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)). Factors to be considered by the reviewing court to determine whether an' error is harmless include “the importance of the witness’ testimony in the prosecution’s ease, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution’s case.” State v. Wille, 559 So.2d 1321, 1332 (La)1990); Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986).
luln the present case,' although Mr. Williams’ prior testimony was read to the jury on the first day of trial, he subsequently testified on the second day of trial. While testifying on the second day of trial, Mr. Williams recanted his prior testimony, in which he stated that Mr. Emery identified Mr. Patterson as his killer in a dying declaration. At Mr. Patterson’s second trial, Mr. Williams testified that Mr. -Emery did not identify his killer before dying. Mr. Williams initially testified during the second trial that he did not see the shooting, which was consistent with his testimony in Mr. Patterson’s first trial. However, Mr. Williams changed his testimony and claimed that he witnessed Mr. Reynolds shoot Mr. Emery.
The State presented multiple witnesses at the second trial who corroborated Mr. Williams’ prior testimony.
First, Lynell Rovaris testified that she and her then-boyfriend, Jules Gettridge, were both on the corner of Humanity Street and Clouet Street when they witnessed Mr. Emery running down Humanity Street — from Feliciana Street towards Clouet Street.[10] Ms. Rovaris testified that she witnessed Mr. Patterson, who she knew went by the nickname “Bambi,” chasing Mr. Emery. According to Ms. Rovaris, Mr. Emery was begging for his life and screaming “Bambi, Bambi this is not for us. Don’t do this. This is not for us. ^Vhy aré you doing this? This is not for us.” She further testified that Mr. Patterson had a gun in his hands and was shooting at Mr. Emery. When' Mr. Patterson’s gun jammed, Mr. Emery was able to 112crawl near Mr. Williams’ grandmother's driveway. Ms. Rovaris testified that after Mr. Patterson unjammed his gun, he *628 shot Mr. Emery again and then ran passed her. Within seconds after Mr. Patterson fled, Mr. Reynolds appeared and also shot Mr. Emery as he lay on the ground. Ms. Rovaris also testified that Mr. Williams was at the scene with her and Mr. Emery and that Mr. Williams called 911. The tape of the 911 call was played for the jury.[11]
Second, Sergeant Gernon, one of the detectives that arrived at the crime scene, testified that he obtained a statement from Ms. Rovaris. Sergeant Gernon testified that Ms. Rovaris claimed that Mr. Patterson first shot Mr. Emery and that she .later identified Mr. Patterson in a photo line-up. Sergeant Gernon also met with Mr. Williams and obtained a statement from him. Although Mr. Williams did not identify the shooter in his 911 call, according to Sergeant Gernon, Mr. Williams explained that Mr. Emery gave the following dying declaration: “Bambi and them shot me. Get me out of the sun.” He also testified that Mr. Williams identified Mr. Patterson, also' known as “Bambi,” in a photo line-up.
The testimony of Mr. Gettridge, which was read to the jury, corroborated Ms. Rovaris’ testimony. He testified that he witnessed Mr. Patterson chasing and shooting Mr. Emery.
Dr. Samantha Huber, Chief Forensic Pathologist in the Orleans Parish Coroner’s Office, testified that she has worked within the Coroner’s Office since 2006, and she has performed over three-thousand autopsies. She testified that Mr. |1REmery received four gunshot wounds to his body. She opined that Mr. Emery could have survived for several minutes after being shot.
The effect of the admission of Mr. Williams’ prior testimony is merely cumulative and corroborative of other testimony adduced at trial. Given the testimony described above, we find that even if the district court erred in allowing the State to introduce Mr. Williams’ prior testimony on the first day of trial, the error was harmless.
Furthermore, the State contends that Mr. Williams’ prior testimony was admissible as substantive evidence of Mr. Patterson’s guilt. The State notes that the general rule is that “when a witness other than the defendant is impeached by the admission of a prior inconsistent statement incriminating the defendant, the statement is admissible only on the issue of credibility and not as substantive evidence of the defendant’s guilt.” State v. Ray, 259 La. 105, 111, 249 So.2d 540, 542 (1971). The State, however, further contends that La. C.E. art. 801(D)(1)(a) provides, in part, that a prior statement is not hearsay if the declarant testified at a trial or hearing, the declarant. was subject to cross-examination, and the statement is:
In a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness’ attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement.
In State v. Cousin, 96-2973 (La.4/14/98), 710 So.2d 1065,. the Louisiana Supreme Court acknowledged the use of prior inconsistent statements as substantive evidence under La. C.E. 801(D)(1)(a). The Supreme Court noted as follows:
Only those inconsistent statements that were given in “the accused’s preliminary hearing or ... prior trial [where the] witness was subject to cross examination by the accused” are classified as non-hearsay and admissible as substan *629 tive evidence. La.Code Evid. art. 801 D(l)(a). Otherwise, prior inconsistent statements are only admitted to impeach or to contradict the witness’s trial testimony, i.e., solely to discredit the witness; these statements cannot be used to divulge the content of the prior statement for the purpose of inviting the jury to believe the content of the statement. La.Code Evid. art. 607 D(2).
Cousin, 96-2978 at p. 10, 710 So.2d at 1070.
In State v. Alexis, 98-1145 (La.App. 5 Cir. 6/1/99), 788 So.2d 57, a similar issue was addressed. In Alexis, two witnesses both gave statements to police that the defendant shot the victim. During the defendant’s first trial, which subsequently ended in a mistrial, both witnesses testified in accord with the statements they had previously given to police. At the defendant’s second trial, both witnesses recanted their statements and prior sworn testimony from the first trial. Recordings of the statements given to police and transcripts of the two witnesses’ testimony at the prior trial were admitted into evidence. Finding no error in the admission of the transcripts, the appellate court reasoned as follows:
[T]he transcripts of [the witnesses’] testimony at the defendant’s prior trial, which were admitted ..., are exactly the type of prior inconsistent statements contemplated by Article 801(D)(1)(a). [The two witnesses] testified at the defendant’s first trial under oath and subject to the penalty of perjury. They were cross-examined by the defendant’s trial counsel, and this testimony was inconsistent with their testimony at the defendant’s second trial. Therefore, the transcripts of the testimony given by [these two witnesses] at the prior trial are not inadmissible hearsay and the trial judge properly admitted the transcripts as substantive evidence of the defendant’s guilt.
Alexis, 98-1145 at p. 14, 738 So.2d at 67.[12]
Similarly, Mr. Williams initially gave a statement to Sergeant Gernon in which he explained that Mr. Emery gave the following dying declaration: “Bambi and them shot me. Get me out of the sun.” Furthermore, Mr. Williams testified at Mr. Patterson’s first trial that, although he did not witness the shooting, he attempted to assist Mr. Emery who was suffering from multiple gunshot wounds. As in Alexis, Mr. Williams testified under oath at Mr. Patterson’s first trial that Mr. Emery told him “Bambi shot me.” He was cross-examined by defense counsel, and his testimony at the first trial was inconsistent with his testimony at the second trial. The transcript of Mr. Williams’ testimony is exactly the type of prior inconsistent statement contemplated by La. C.E. art. 801(D)(1)(a). Therefore, the transcript from the first trial is not inadmissible hearsay and was properly admitted.
Thus, we find no error in the district court’s allowing of Mr. Williams’ prior testimony to be introduced into evidence. There is no merit to this assignment of error.

DECREE

For the foregoing reasons, we affirm the defendant’s conviction and sentence.
AFFIRMED

. As we do in every criminal case, we have •reviewed the record for errors patent and found none.

. Although the trial transcript spelled the victim’s name as "Carey,” the record indicates, and the parties agree, that the victim’s.name is spelled "Kerry,”

.Mr, Reynolds was tried separately. Following an October 1, 2009 jury trial, he was found not guilty, Shortly after his acquittal, Mr. Reynolds was shot and killed.

. On July 19, 2013, Mr. Gettridge died of natural causes. His testimony from the first trial was read to the jury in Mr. Patterson’s second trial. Mr. Gettridge had testified that he was standing on the corner of Humanity Street and Clouet Street along with his girlfriend, Lynell Rovaris, and he witnessed "Bambi running behind [Mr. Emery] shooting him.”

. Although the trial transcript spelled his name as "Terrence,” the record .indicates his name is spelled "Terrance.”

. At Mr. Patterson’s first trial, Mr. Williams testified that he was in front of his grandmother's house at 3318 Clouet Street when the shooting occurred. Although he did not witness the, shooting, Mr. Williams heard shots fired and attempted to assist Mr. Emery, who was suffering from multiple • gunshot wounds. He further testified that Mr. Emery told him "Bambi shot me.” Mr. Williams also testified that he gave a recorded statement to Sergeant Nicholas Gernon of the New Orleans Police Department ("NOPD”) two days after the shooting. Mr. Williams explained to Sergeant Gernon that before Mr. Emery died, he stated "Bambi and- them shot me. Get me out of the sun.” Mr¡ Williams also identified Mr. Patterson in a photo lineup. ,

. On October 21, 2015, Mr. Patterson filed a “Motion for Leave to Supplement Appeal and to Copy Record.” On October 22, 2015, this court granted Mr. Patterson’s motion and ordered that record be transferred to him. Mr. Patterson, however, failed to file a supplemental brief with this court.

. “Hearsay” is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” La. C.E. art. 801(C). Under La. C.E. art. 802, hearsay is inadmissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 804 provides exceptions to hearsay when the de-clarant is unavailable.

. "These jurisprudential criteria are sub--sumed in La.Code Evid. art. 804(B)(1); permitting .the use of prior recorded testimony of an unavailable declarant as an exception to the hearsay rule.” Ball, 00-2277 at p. 26, 824 So.2d at 1112.

. Ón direct éxamination, MS.'Rovaris testified that she and Mr. Gettridge were both standing on the comer.. On cross-examination, she testified that- Mr. Gettridge was walking towards her, not standing next to her.

. The 911 tape was authenticated by Sierra Harris, a complaint operator for the NOPD.

. The appellate court also held that the statements given to police, however, did not “fit within the Article 801(D)(1)(a) exception and were erroneously admitted into evidence and allowed to be considered as substantive evidence of defendant's guilt.” Alexis, 98-1145 at p. 14, 738 So.2d at 67.